## VANDERVELD et al. v. ROLLMAN & SONS CO.

## ROLLMAN & SONS CO. v. VANDERVELD et al.

Circuit Court of Appeals, Sixth Circuit. November 7, 1928.

Nos. 4942, 4943.

Frank E. Liverance, Jr., of Grand Rapids, Mich. (Walter F. Murray, of Cincinnati, Ohio, on the brief), for Vanderveld.

Bruce S. Elliott, of St. Louis, Mo. (Bettman, Riesenberg, Cohen & Steltenpohl, of Cincinnati, Ohio, on the brief), for Rollman & Sons Co.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The following brief statement of the nature of the case is largely excerpted from the opinion of the District Judge:

The bill of complaint in this action alleges the infringement by use by the defendant of two patents, No. 1,420,612, applied for January 28, 1921 (issued June 20, 1922), and No. 1,443,332, applied for August 11, 1921 (issued January 23, 1923), both granted to

Anthony Vanderveld, a half interest in each being assigned to Stephen E. Parrish. Harry B. Parrish is the owner by inheritance of the assigned one-half interest primarily owned by Stephen E. Parrish, and the Grand Rapids Show Case Company is the holder of an exclusive license to manufacture and vend the device shown in the above patents.

The defendant, the Rollman Sons Company, owns and operates a large department store, and in its business uses a number of the devices purchased from the Measuregraph Company, which are alleged to infringe. Both patents relate to measuring and computing machines, in which ribbon, cloth, or like merchandise may be measured by being drawn through the machine and between a measuring roller and a so-called pressure roller, which latter holds the cloth firmly against the measuring roller, causing it to revolve as the cloth is drawn through. By appropriate shafts and gears the rotary motion of the measuring roller is made to operate indicators showing the length of the cloth measured, in units and fractions of a yard; and computing cylinders showing the cost of the length measured at various prices per yard.

The final decree adjudged claims 2 and 23 of patent No. 1,420,612 not only not infringed but invalid, and claims 7 and 10 of patent No. 1,443,332 valid, and claim 10 infringed and claim 7 not infringed. These four claims are the only ones here in issue. The bill of complaint was accordingly dismissed as to claims 2 and 23 of patent No. 1,420,612, and as to claim 7 of patent No. 1,443,332. All parties have appealed.

1. Claim 2 of patent No. 1,420,612 reads as follows:

"2. A cloth measuring machine having two scales thereon, each comprising a consecutive series of numbers indicating units of cloth measurement, one of said scales being located in a substantially horizontal plane and the other in a substantially vertical plane, measuring mechanism included in the machine through which cloth or like material may be drawn to operate said mechanism, indicating means movable over each of said scales, and means for driving said indicating means from the measuring mechanism as the cloth or like material is passed through the machine to move the said indicating means simultaneously and equally over both scales, so as to pass from one indicating number to the next higher with each unit length of measurement of materials passed through the machine."

Claim 23 differs from claim 2, so far as pertinent here, only in describing the location of the second (or "additional") scale as "in a plane substantially at right angles" to that of the other scale, instead of describing the two scales (as is done in claim 2) as located "one * * * in a substantially horizontal plane and the other in a substantially vertical plane."

Vanderveld was not a pioneer in the art of cloth measuring machines operated in stores by salesmen by manually drawing the cloth between a pressure roller and a measuring roller, the rotation of the latter's shaft, caused by frictional engagement of the cloth and rollers, operating through appropriate gearing, an index machine registering the number of yards and inches measured. We refer primarily to the patent to Jones, No. 443,528, issued December 30, 1890—30 years before Vanderveld. Nor was there anything new in the broad idea of making index numbers readable by the purchaser as well as by the salesman. Jones (supra) disclosed two stationary pointers and two scales, one formed on a vertical plane and one on a cylindrical surface that moved about a horizontal axis. And Winter, by patent No. 270,870, issued January 16, 1883—37 years before Vanderveld—showed two indexes in the same plane, but back to back. Winter's specification says: "I place the gearing between the two pairs of dials, the dials of each pair being back to back, with the shaft e between them and the arbors of the hands passing through both dials, so as to have hands on both ends, in order that the measurement may be read from both sides of the machine." True, Winter does not state that one of the dials is for the seller and the other for the buyer, but that consideration, even if the fact were not implied, would not diminish the effect of the reference as regards invention in the claims under consideration.

While neither Jones nor Winter, nor both, may expressly anticipate Vanderveld, we are constrained to agree with the District Judge that there was no invention in putting the two indicators in different planes, as called for in the two claims we are considering. We are not impressed that the rejection by the Patent Office by reference to Jones and Winter of the original claims, for which claims 2 and 23 were substituted, materially increases the ordinary presumption of the validity of the claims in question. Nor are we impressed that the fact that Winter's machine was large and rested on the floor, standing as high as a man's head, while Vanderveld's machine was intended to rest on a counter or table, assists in a conclusion of invention in the Vanderveld device. In Winter, as well as in Van-

derveld, one dial was in plain view of the buyer in the position the latter would naturally be. Indeed, Jones' machine, which had separate dials for seller and buyer, was designed to be secured to a store counter.[1] The conclusion that claims 2 and 23 are invalid for lack of invention over the prior art makes it unnecessary to consider the question of their infringement.

■ 2. Claim 10 of patent No. 1,443,332, reads as follows:

"10. A measuring mechanism for measuring cloth or like material drawn therethrough, including a measurement indicator, spring means normally tending to hold the mechanism and indicator at initial zero position, said means being overcome and energized by operation of the mechanism, a brake for holding the mechanism and indicator to any position to which operated at the end of a measuring operation, manually operable means for setting and releasing said brake, and stop means controlled by said manually operable means for preventing entrance of cloth or like material into the machine for measurement except when the mechanism and indicator are at initial zero position."

Claim 7 differs from claim 10 in no respect affecting the question of validity. The actual difference will be referred to later in another connection.

The validity of these claims depends in the last analysis upon the novelty and effectiveness of the "stop-member" or "stop means" of the combination, properly called a throat-lock.

The specification states the primary purpose of the invention to be "the provision of means used in connection and combination with the measuring mechanism of the structure for automatically interposing a stop for the entrance of cloth or the like into the machine after it has once been operated through a cycle of operations, until such time as the brake mechanism forming a part of the mechanism has been released to permit the measuring mechanism to return to its initial position, with the indicators at zero position, the stop means used being automatically moved out of the way and to an inoperative position with the release of the brake mechanism." As said by the District Judge: "The problem presented was to provide mechanical means which would *prevent commencing* a second operation before the indicators had been re-

turned to initial zero position." The utility and value of a device which reasonably solves such problem plainly appear.[2]

Vanderveld accomplishes this result by the use of an irregularly shaped stop-bar in the form of an arm which, when the rollers are separated at the end of a measurement, drops into or across the throat of the machine, and continues physically to obstruct it against the entry of goods between presser and measuring roller until the indicating mechanism has been reset to zero. Defendant, while apparently not contending that either of these claims, 7 or 10, is directly anticipated by prior art patents, contends that, if considered broadly enough to cover defendant's machine, both are void for lack of invention over certain prior references. We are unable to assent to this contention.

In the patent to Scott (reissue No. 14,-898), the knife blade, after the completion of a measurement, would be in position to prevent the passage of the cloth through the right toward the left of the machine. However, as pointed out by the District Judge, it does not serve as a stop to prevent insertion of the goods between the rollers, and the commencement of a second operation before the first was finished; and, as the knife was normally in the throat opening when the rollers were separated, whether the indicating means was at advanced or zero position, and normally served as a guide to which to advance the cloth, it presented no obstruction unusual to a machine at zero position.

By the device of the Hosch-Turner patent (No. 1,371,028), provision was made for preventing the re-use of the machine for measuring until the indicating hands should be returned to zero. That device was in no sense a throat-lock. It was a mechanical device by which the presser roller, which was raised at the end of the measuring operation, could not be again lowered into connection with the measuring roller until the indicating hands were restored to zero.

In the Stocke patent (No. 1,437,207), while one of the stated objects of the invention is, on the completion of a measurement, to necessitate the zero-setting of the indicator as a prerequisite to the further operation of the machine, and, although the specification speaks of an obstruction by way of a horizontal bar having an angular portion normally projecting across the space between the rollers, and so preventing introduction or movement of the material therebetween, we

---

[1] Jones' specification says: "In use the machine is secured to a store counter or some convenient place where it may be observed to read the index numbers by both the purchaser and salesman, so that each may see the number of yards measured and registered by the machine."

[2] All italics in this opinion ours unless otherwise stated.

do not think this bar device solved the problem we are considering by means fairly equivalent to those of claims 7 and 10. As we understand the Stocke disclosure, on the separation of the rollers at the conclusion of a measurement the indicating mechanism is automatically returned to zero position, thus making it necessary for the clerk to take note of the indicator before removal of the material. In such a situation there was no occasion for a throat-lock of Vanderveld's conception, for preventing entrance of cloth or like material into the machine for measurement, except when the mechanism and indicator are at initial zero position. Stocke's bar was not across the "slot" between the rollers, except when the latter were pressed together at the close of a measuring operation; and, when the rollers were separated (and the indicator set at zero), the bar rose above and out of the way of the "slot," but, when the bar was projecting across the "slots," and the latter were in contact, the bar manifestly caused no more obstruction to the introduction of goods than was created by the pressing of the rolls together. This bar seems to have been largely and primarily intended as an anti-spinning device operating at the conclusion of a remnant measurement. We think Stocke's bar not the equivalent of Vanderveld's "stop means," associated with any manually operable brake means and controlled by the operation thereof. It seems clear that claims 7 and 10 involve invention.

Consideration of the specification and drawings of the Hosch-Wheeler patent, No. 1,520,491, December 23, 1924, under which defendant's Measuregraph machine is constructed, examination of a careful drawing of defendant's machine, and expert testimony relating thereto, are convincing that claim 10 is infringed. We think each and every element of claim 10 reads literally and substantially upon defendant's machine. Infringement is not avoided by the fact that in plaintiff's device the machine is reset to zero and the throat-stop raised by a resetting lever at one side of the machine; while in defendant's machine these operations result from pressing a reset button at the rear of the machine; nor by any other manual differences in operation. The means employed by the respective devices impress us as mechanical equivalents of each other.

The only meritorious question remaining relates to the infringement of claim 7. In the device of the Vanderveld patent now under consideration, when the indicating mechanism has been reset to zero, the measuring roller, as part of the entire measuring mechanism, returns to zero position; while in defendant's device, through the interposition of a clutch between the measuring roller drum and the gearing, etc., of the measuring mechanism, the measuring roller (unless at the end of a measurement of 12 yards) does not so return, but remains stationary. The fourth element of claim 7 reads: "Spring means tending to return said *measuring roller* and associated mechanism to initial zero position." The return of the measuring roller is not mentioned in claim 10. While in the opinion of the District Judge the effect of the words in claim 7 we have italicized was not in terms decided, the decree adjudged noninfringement of that claim.

Plaintiff contends, however, that, but for the existence in defendant's machine of a brake for the purpose alone of holding the measuring roller and its associated mechanism in any position to which operated, the *measuring roller* (in connection with the entire mechanism) would return to zero under the influence of the "spring means tending to return said measuring roller and associated mechanism to initial zero position"; and that, therefore, the operation of the brake in question did not avoid infringement. But not only is it the rule that a claim is not infringed if any one of its elements is omitted without the substitution of an equivalent (Cimiotti Unhairing Co. v. American, etc., Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100); but the inclusion in claim 7 of the element expressly calling for spring means tending to return the *measuring roller* to initial zero position appears additionally purposeful from the fact of the omission from claim 10 of reference to the measuring roller; and the limitation is none the less effective because unnecessary and self-imposed. McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800; Cimiotti Co. v. American Co., supra; Ohmer Co. v. Ohmer (C. C. A. 6) 238 F. 182, 193.

It follows from these views that the decree of the District Court should be modified by omitting the adjudication of noninfringement of claims 2 and 23 of patent No. 1,420,612, and, as so modified, should be affirmed. The record will be remanded to the District Court, with directions to enter decree in accordance with this opinion.

Neither party will recover costs of this court.