**MERIT OIL EQUIPMENT CO. v. FRY EQUIPMENT CORPORATION et al.**

No. 5419.

Circuit Court of Appeals, Sixth Circuit.

April 10, 1931.

Lynn A. Williams, of Chicago, Ill. (Thomas H. Sheridan and Williams, Bradbury, McCaleb & Hinkle, all of Chicago, Ill., on the brief), for appellant.

C. L. Byron and H. M. Huxley, both of Chicago, Ill., for appellees.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The defendant below appeals from a decree finding valid and infringed claims 7, 8, 9, 13, 14, 15, 16, and 19 of patent No. 1,635,115, for an apparatus for cleaning containers and the like, issued July 5, 1927, upon application of Leo Deutsch and another. With the development of a need for a service station unit for cleaning transmission, crank, and differential-gear casings upon automobiles, by flushing with kerosene or other grease solvent, a number of applications were filed for patents upon devices of this general nature. Few of them were of practical utility. Deutsch conceived the idea that such a device, to be serviceable, must be compact and light, to facilitate handling, and that provision must be made for a continuous circulation of the cleaning fluid, that is, that there must be both a flushing and a suction conduit, drawing the cleansing fluid from a portable tank and returning it to the same container after it had passed through the casing to be cleaned. Thus the same fluid could be used over and over again, provided proper means were installed for straining it upon its return to the main source of supply. It

was this concept which underlay his advance step in the art.

Deutsch accomplished his purpose by an exceedingly ingenious combination of mechanical elements. To avoid a duplication of pumps he utilized the ejector principle, carrying part of his main stream through a flushing hose to the gear casing to be cleaned, and using another part to produce suction in the other conduit. The problem of continuous circulation of the cleaning fluid from supply reservoir, to the casing, and back to the reservoir, was solved. By this device he also prevented particles of hard substance passing through the pump and injuring its parts, and by placing a valve-controlled nozzle at the end of the flushing hose the supply of cleaning fluid to the casing could be shut off without stopping the pump or the suction; and so his device was capable of entirely withdrawing the cleaning fluid from the casing after the operation was completed. The single pump was carried by the head of a barrel-like tank, from the bottom of which upper head was depended a basket-type strainer into which the suction hose discharged. To keep the strainer clean Deutsch provided that the stream from the suction conduit should play against the vertical side of the strainer, thus continually washing it off and causing the solid matter "to be deposited at a point away from said strainer."

Claims 7, 8, 9, 13, 14, 15, and 16 are all built around this above-mentioned method of keeping the strainer clean by discharging the returning liquid against its side. In none of them, excepting possibly claim 14, is the true nature of the advance step disclosed or emphasized—the compactness of the unit, the single pump, and the cycle of the cleaning fluid. True, several of these claims call for most of the separate elements of the combination, such as the tank, the pump, the suction conduit, the strainer, and, in claim 14, broadly, "means whereby cleaning liquid may be supplied from said tank to the casing to be cleaned," but each contains the element, in a variety of modes of expression, that the strainer shall be "so arranged that the material from said (suction) conduit will be discharged against the strainer for keeping the latter clean and the solid matter will be deposited at a point away from the strainer." Claim 7. Whether these claims are to be considered as descriptive of a new machine, in its entirety or as an article of commerce, or as calling for a combination of mechanical elements co-operating to produce a result never before attained in a single machine, the call for an arrangement or organization of the discharge end of the suction hose and the strainer, whereby the returning fluid is used to keep the strainer clean, forms a descriptive feature of the machine, or an essential element of the combination, without which another's device would not infringe.

We do not find this element in the alleged infringing device of the defendant. In the defendant's device the suction hose discharges below the normal operating level of the cleaning fluid. The basket strainer is enlarged and cylindrical in shape, so that its flat base extends further toward the bottom of the tank. Gravity is relied upon to deposit the hard matter at the base of the cylinder or basket, but this obviously requires that the stream of returning fluid discharged from the suction conduit shall not continually stir up such hard particles. Accordingly, the defendant provided a simple baffle-plate below the discharge orifice to deflect or break the force of the stream. The function of this baffle-plate, however, is not to wash off the strainer nor to assist in depositing solid matter at a point away from the strainer. It does not so operate. Its function is solely to avoid agitation of that which has already settled by gravitation. We are of the opinion that in so far as the means disclosed for keeping the strainer clean is of the essence of the inventive step, even though of but one element of the machine or combination, the patentee may not claim any, all, and every means for accomplishing the desired result. See Davis Sewing Machine Co. v. New Departure Mfg. Co., 217 F. 775, 782, et seq. (C. C. A. 6); Heidbrink v. McKesson, 290 F. 665, 668 (C. C. A. 6); and compare Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 256, 48 S. Ct. 474, 72 L. Ed. 868. Construed in the only way by which it is possible to sustain them, that is, as calling for the particular means disclosed by the patentee, they are not infringed by defendant's baffle-plate organization which is in no sense an equivalent. Claims 7, 8, 9, 13, 14, 15, and 16 must therefore be held not infringed, and the decree below must be reversed to this extent.

This brings us to a consideration of claim 19, printed in the margin.[1] This claim is accurately descriptive of the patentee's device and unambiguous. Construed in the

[1] 19. A motor vehicle service station unit for cleaning gear casings and the like comprising a pump, a suction line and a pressure line connected to said pump for circulating a cleaning fluid through the casing to be cleaned, means for selectively using either the suction line or pressure line, and means for separating any solid matter removed from said casing with said cleaning fluid.

light of the specification it clearly calls for (1) a pump, that is, a single pump for operating both flushing and suction conduits, and thus possibly by necessary implication requiring use of the ejector principle; (2) a suction line; (3) a pressure (or flushing) line; (4) means for selective use of either suction or pressure line—the valve-controlled nozzle or any valve in the pressure line beyond the ejector; and (5) the strainer; all so organized as to permit the "circulation" and reuse of the cleaning fluid.

It is not contended that this claim does not read directly upon the defendant's device, or that the various elements do not constitute a true combination, as distinguished from an aggregation. The sole defenses as to it are anticipation and want of invention in view of the prior art. We find nothing precisely anticipatory in the patent references. Anderson, in his patent No. 1,549,952, August 18, 1925, used two tanks, forcing the liquid from one by compressed air and drawing it into the other by suction. At the end of the operation the cycle of compressed air was reversed and the cleaning fluid was redelivered through a strainer into the original tank from which it had been withdrawn. This device lacked many of the points of utility disclosed by Deutsch, the most notable being a complete lack of continuous circulation of the cleaning fluid during any length of operation. This circulation of the cleaning fluid is also clearly absent in the device of Maker, patent No. 1,506,652, August 26, 1924, notwithstanding that the gear casing being once filled, that small portion of the supply could be circulated from the casing, through the pump, and back to the casing, by the turning of a valve to change the intake from the supply tank to an outside hose or conduit. Osborne, patent No. 1,633,283, June 21, 1927, has the single portable tank but a reversible pump by which the cleaning fluid is first forced under pressure into the gear casing, thence drains into a separate catch-basin or receptacle and is subsequently, by reversing the pump, sucked back into the supply tank. In none of these do we find an even close approximation of the concept of Deutsch.

Menge, patent No. 1,552,998, September 8, 1925, had two pumps, one for pressure and one for suction. The marked disadvantage of this is that particles of grit and hard, solid matter are continually passing through the suction pump to the possible damage of its parts. The device also lacks the compactness, simplicity of design and operation, and the general utility of Deutsch. We have no hesitancy in holding that the reduction in the number of working parts of the device of the patent in suit, and the compactness achieved by this and by the use of the ejector principle to produce suction, were features of advance over Menge and entitled to recognition as such, although Menge is perhaps the closest reference in the prior art.

In the related arts, the closest reference is that to Cartwright, patent No. 1,331,239, for a portable pumping apparatus. This device has many of the mechanical features employed by Deutsch but is to be regarded primarily and essentially as a pumping device. The function of cleaning comparatively small gear casings by continuous circulation through them of a cleaning fluid was not, we think, even contemplated, notwithstanding the pressure chamber between the pump and the injector used to produce suction is equipped with a "distributing union" to which a number of hoses may be coupled "so that they may be utilized as desired." Cartwright could readily be reorganized to anticipate Deutsch, but in this reorganization and in the application of the device to a use for which it was not originally intended and which was practically impossible without reorganization, we would find the exercise of invention. Without such reorganization Cartwright would not anticipate. Compare Gordon Form Lathe Co. v. Walcott Mach. Co., 32 F.(2d) 55, 58 (C. C. A. 6), and cases there cited.

Nor do we think that it required only mechanical skill to combine the various elements (admittedly all old) by which Deutsch accomplished his end. Others were groping in the same direction, but it remained for him to definitely solve the problem. This is an indication of the exercise of more than mechanical skill. It is contended that the device of the patent lacked utility, in that its first commercial embodiments were inefficient, but whether the defect was due to the type of pump used, as one witness testifies, or to some other detail, it is not inherent in the invention itself. It would indeed be strange if no change of detail were to result from commercial production, or if improvement in efficiency of organization or manufacture, without departure from the original concept of the inventor, were to destroy the patent. Structures later built well within the calls of claim 19 had a good measure of commercial success. The defendant has accorded the patent the tribute of imitation, its device differing from the patented device only as to details not covered by claim 19, and we think that it cannot be said either that invention was wanting or that the device lacked such

utility as was necessary for a finding of patent validity.

The decree of the District Court finding claim 19 valid and infringed is affirmed. Neither side will be awarded costs in this court.