## DIRECTOPLATE CORPORATION v. DONALDSON LITHOGRAPHING CO.*

### No. 5630.

Circuit Court of Appeals, Sixth Circuit.

July 2, 1931.

*For opinion denying rehearing and modifying opinion, see — F.(2d) —.

Frank Parker Davis and Glen E. Smith, both of Chicago, Ill., for appellant.

Geo. I. Haight and Samuel W. Banning, both of Chicago, Ill., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellant brought its action in the court below alleging infringement of claims 1, 5, 8, and 12 of patent No. 1,396,962, and claims 4, 5, 7, 20, 23, 25, 41, 45, 46, 47, 48, 49, 50, 67, 68, and 69 of reissue patent No. 16,567. Both patents originated in applications filed by one Alexander T. Koppe and are hereinafter respectively referred to as Koppe's first and second patents. The first patent was for a "vacuum-pressure frame" designed and intended (according to the specification) as appropriate for use in "a machine for making offset press plates." The second patent was for such a "machine for making offset press plates." The first issued November 15, 1921. The application for the original second patent was filed June 30, 1922; the patent (No. 1,510,007) issued September 30, 1924; application for reissue was filed September 25, 1926; and the reissue was granted as of March 8, 1927. The defenses were invalidity and noninfringement. The bill was dismissed by the District Court on the ground that infringement had not been shown. Plaintiff appeals.

We are not impressed with the defendant's contentions of inutility, inoperability, anticipation or lack of invention as regards Koppe's first patent. It is true that Koppe was not a pioneer in the field of photographically producing offset press plates, but he was the first to utilize atmospheric pressure in holding the negative firmly against the sensitized surface of the press plate. Prior to him mechanical pressure only had been used for this purpose, and we think that whatever had been done by Huebner (the real pioneer in the field of mechanical pres-

sure photo-composing machines) in the direction of substituting vacuum pressure for mechanical pressure before the filing of the application for the second patent, certainly before the application for the first one, cannot be said to have passed beyond the experimental stage. It is also true that the use of vacuum pressure in connection with photographic printing was old. See patents to Cope, No. 296,391, April 8, 1884; to Saltmann, No. 654,421, July 24, 1900; to McCaslin, No. 683,059, September 24, 1901; and to Levy, No. 1,246,620, November 13, 1917; and the German patent to Teppich, No. 245,915, May 4, 1911. But the devices of all of these patents operated to press the sensitized paper or plate against the negative by use of a flexible backing or cover, while the present device operates to press a rigid glass negative against a rigid sensitized plate, the required play being given, not by the flexibility of either, but by the organization of frames and sealing strips. We think that invention was displayed in the reorganization required, and that neither anticipation nor lack of utility was shown.

The underlying concept of Koppe's first patent was that atmospheric pressure should be exerted directly upon the glass negative and thus hold it firmly to the sensitized press plate. Obviously he could not obtain a machine or product patent upon this concept alone, but only upon the means disclosed for effectuating his purpose. Miller v. Eagle Mfg. Co., 151 U. S. 186, 201, 14 S. Ct. 310, 38 L. Ed. 121. Compare also: De Forest Radio Co. v. General Elec. Co., 283 U. S. 664, 51 S. Ct. 563, 75 L. Ed. 1339. A certain amount of vertical play was required to accommodate the device to negatives of different thickness, more, Koppe evidently thought, than would be supplied by the elasticity of the sealing strips, for the method practiced by his patent involved really three elements or steps. An outer or positioning frame was first located at the desired place upon the sensitized press plate. This positioning frame carried a rubber sealing strip around its outer edge and an extension or flange on its inner edge. When the positioning frame had been located, the negative was laid loosely within the inner opening. A seal was then required as between the outer edges of the negative and the inner edge of the flange of the positioning frame. This seal was provided by a rectangular frame of inverted U-shaped cross-section, called the inner or "bearing frame," carrying double rubber sealing strips, one of which rested upon and along the outer edge of the negative, and the other upon the flange of the positioning frame. Thus when the air was exhausted from beneath the positioning frame the pressure of the atmosphere operated, not only to hold the negative to the press plate, but also to strengthen the contact of the three sealing strips—between press plate and outer frame, between inner and outer frames, and between the inner frame and the negative. The inventive concept lay in the means devised for effecting this three-line seal which, supposedly, would accommodate itself to any thickness of negative and to any irregularity of thickness, of a gradual sort, as along the edge of the negative. This is clearly reflected in the claims. Claim 8 is typical and is alone here quoted.[1]

In determining the question of infringement we are concerned with the matter of claim construction as well as with the nature of the defendant's device, the elements comprising it, the mode and manner of operation of both devices, and whether the elements of defendant's device are to be considered merely mechanical equivalents of the elements enumerated in the claim. Upon the present record it is clear that the claim above quoted, if read literally, does not cover the defendant's device, in which the negative is carried by clamps upon the inner and under portion of the outer frame and the inner frame is used solely for the purpose of hermetically sealing the negative within the outer frame, first by a sealing strip between the inner frame and the negative, and secondly by a flexible curtain seal between the inner and outer frames. The points of resemblance are that before assembly for use the defendant's device is made up of two frames, and that atmospheric pressure is used to seal these two frames together. The chief point of dissimilarity is that after assembly, and when in use, the negative and the two frames of defendant's device are practically and functionally integral, and the only vertical play of the negative (viewing the operation as upon a horizontal press plate) is afforded by and limited to the elasticity of the outer sealing strip.

The claim clearly calls for a frame consisting of two parts which, in use, are separate and distinct, and in which the elasticity of the sealing strips is of minor im-

[1] "8. A two part negative pressure frame, comprising a positioning section within which the negative is arranged, a sealing strip carried by the positioning section to engage the support on which the negative is to be held, and sealing strips carried by the bearing section to engage the positioning section and negative."

portance. The defendant's device, in use, does not comprise these two separate and functionally independent parts, and elasticity in the sealing strip of the outer or positioning frame is of prime importance. The question presented is whether the calls of the claim are to be treated as examples of a class only—as the preferred form—and are to be extended to cover the defendant's device under the doctrine of equivalents; or whether effect must be given to the apparent limitation of the claim, and the defendant's device be held not to infringe.

As so clearly pointed out by Judge Learned Hand in Claude Neon Lights, Inc., v. Machlett & Son (C. C. A.) 36 F.(2d) 574, there is an element of inconsistency between the doctrine of equivalents and the doctrine that it is the claim and that alone which measures the monopoly. In the ordinary case, the extent to which the court will follow the one doctrine to the exclusion of the other is largely controlled by the state of the art, the originality of the invention, and the disclosure of the specification. Koppe was not a pioneer in the field of vacuum-pressure frames for photographic printing. Like all improvers he was, and is, entitled only to a narrow range of equivalents. He has disclosed no broad, generic invention, unless it be in the use of the vacuum-pressure frame in a photo-composing machine, and this combination is not claimed. He has been specific in matters of number, form, structure, relationship, and function of the elements of his claim (as the condition of the art required him to be), and we do not think that he can now be permitted to depart from the plain meaning of the language he has adopted, or to claim for such language a broad and generic construction. Compare Lektophone Corp. v. Rola Co., 282 U. S. 168, 171, 51 S. Ct. 93, 75 L. Ed. 274.

Viewed from another angle, intent and the inventor's own appraisal of the nature of his invention are of great importance. In D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236, 240, this court said: "Where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency." This statement has peculiarly forceful application to the present case. Even though we were to conclude that Koppe might have claimed a broad monopoly in the use of vacuum-pressure frames, of whatever structure, in a photo-composing machine, he has voluntarily limited himself to a specific construction of clearly defined elements all pertaining to the inventive step as he then understood it. Such limitation is not the less effective because voluntary or inserted unnecessarily. Firestone Tire & Rubber Co. v. Seiberling (C. C. A. 6) 257 F. 74, 78, 79; Lakewood Engineering Co. v. Stein (C. C. A. 6) 8 F.(2d) 713, 715; Vanderveld v. Rollman & Sons Co. (C. C. A. 6) 28 F.(2d) 948, 951. That which is not literally within the claim does not infringe.

Further than this, the defendant's device utilizes the forces of nature and operates in a manner substantially different from the device of the patent. The "bearing section" of the claim, as a separate unit unattached to negative or positioning frame, for so the claim must be construed in view of the specification, is wholly absent. So also are the practically unlimited play of the inner sealing strip upon the negative, the flange of the positioning section, and the function of the bearing section in horizontally bridging the gap between the negative and the positioning section. Elements of the claim are omitted, but, more than this, the manner of operation of the two devices, we are convinced, is substantially different. If this be so the defendant's device does not infringe. Bates v. Coe, 98 U. S. 31, 42, 25 L. Ed. 68; Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 568, 18 S. Ct. 707, 42 L. Ed. 1136. For these reasons the decree of the District Court, finding this first patent not infringed, must be affirmed.

The claims of the second patent in suit may be divided into three separate groups. Claims 4, 5, and 7 relate to "sealing bars" (claims 5 and 7) or "adjustable means cooperating with the ends of the press plate whereby said negative carrying frame may be positioned beyond the end of the press plate" (claim 4), in "a machine for photographically preparing press plates." Claims 20 and 23 cover, with other essential elements of such a machine, "means for adjusting the

distance between the carrier members, bearing the negative carrying frame" (claim 20), and "a negative carrying frame carriage for said machine, said carriage being provided with means for varying the dimensions thereof" (claim 23). And claims 41 and 45 to 50, inclusive, cover broadly "the combination in a machine for photographically preparing press plates, of means for supporting a press plate, negative carrying means mounted for movement to locate a negative in various positions opposite said press plate, and vacuum pressure means movable with said negative * * *" (claim 41). .

We do not deem it essential to deal separately with claim 25, which relates solely to the mechanical details whereby the thin zinc press plate is held firmly upon the resilient blanket covering the bed plate; nor with claims 67, 68, and 69, which simply combine the "sealing means" of claims 4, 5, and 7, and the broad combinations of claims 41 and 45 to 50, inclusive, that is, the vacuum frame in a photo-composing machine. If claim 25 is infringed, which is doubtful, we see nothing more in it than the result of the exercise of mechanical ability in the selection of more or less obvious means, all mechanically old, to accomplish an old result of positioning the press frame. As to claims 67, 68, and 69, if either group of claims 4, 5, and 7, or claims 41 and 45 to 50, inclusive, are not infringed, claims 67, 68, and 69 would not be. If claims 41, etc., are invalid, we see no way to save claims 67, 68, and 69, which would not likewise serve to validate claims 4, 5, and 7. If neither of the other groups is valid, invention would not be discernible in combining them.

We consider first, as the most important, claims 41 and 45 to 50, inclusive. These claims, as we have said, call broadly for the combination of a vacuum frame with other essential elements of a photo-composing machine. They were introduced by the reissue application and much is said in the briefs as to the legality of so doing. We do not deem it necessary to determine that question. In his first patent Koppe distinctly disclosed the use of vacuum frames in "securing the negative in contact with a surface on which the negative is to be photographically reproduced, as for example, *the press plate of a machine for making offset press plates.*" Passing the question of whether more than the mechanical ability of one skilled in the art would be required to adapt the vacuum frames of the prior photographic printing art to use in the photo-composing machine of to-day, these claims of the second patent must fall within the condemnation of the rule that all that is disclosed by the specification of a patent, but not claimed, is irrevocably abandoned to the public, except in so far as this may be avoided by reissue. Mahn v. Harwood, 112 U. S. 354, 361, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665; McClain v. Ortmayer, 141 U. S. 419, 423, 12 S. Ct. 76, 35 L. Ed. 800; Royal Co. v. Tweedie, 276 F. 351 (C. C. A. 8); Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co., 1 F. (2d) 673, 678, 679 (C. C. A. 9); Gladding-McBean Corp. v. N. Clark & Sons (C. C. A.) 16 F.(2d) 50, 51. Claim for the generic combination of vacuum frame, press plate, and the other elements of a photo-composing machine might have been made in Koppe's first patent, at least upon minor change in the specification. The case is therefore not one in which the claims inserted on reissue of the second patent were so far for a different invention that they could not have been made in the first application; and we do not decide what effect a patent disclosure of such wholly independent invention might have upon the rights of the inventor under an application subsequently filed, that is, whether in such case the disclosure must be considered a publication only, or a dedication. Had the applications been copending the rule would, of course, be otherwise, for the question is not one of anticipation or prior use, but one of dedication to the public and abandonment; and once having been abandoned in this manner, the right to patent the invention can not be recalled. Kendall v. Winsor, 21 How. 322, 328, 16 L. Ed. 165.

Turning to claims 4, 5, and 7, we are at once confronted with the question of whether, the defendant having a free right to employ a vacuum frame in a photo-composing machine (provided it does not infringe the first patent), more than mechanical ability would be required to devise some type of sealing means adjacent the ends and sides of the press plate, which would obviously be required to permit the vacuum frame to overlap such ends and sides and to function in that position, and to thus enable the plate-maker to use the entire sensitized surface. Compare: Lovell Mfg. Co. v. Cary, 147 U. S. 623, 637, 13 S. Ct. 472, 37 L. Ed. 307; Reynolds Spring Co. v. Young Industries, Inc., 36 F.(2d) 150 (C. C. A. 6); Adams v. Galion Iron Works & Mfg. Co. 42 F.(2d) 395 (C. C. A. 6); Beck-Frost Corp. v. Ford Motor Co., 44 F.(2d) 519 (C. C. A. 6). This contention also lends support

to the further contention that these claims are invalid as functional if the "adjustable means" of claim 4, and the "sealing bars" of claims 5 and 7, are to be given so broad a construction as to embrace every manner of accomplishing the desired end. We think, however, that the claims may be saved by construing them as calling for the specific means disclosed in the patent in suit. Merit Oil Equipment Co. v. Fry Equipment Corp., 48 F. (2d) 488 (C. C. A. 6). So construed we think the evidence fails to show that they are infringed.

Lastly, claims 20 and 23 introduce into the otherwise well-known combination of elements open to public use merely the feature of a carriage for the negative frame, which carriage is adjustable to accommodate different sizes of such frames. The adjustability of a part does not involve invention (Paquette v. Potter Mfg. Co., 46 F. [2d] 271 [C. C. A. 6]), but here too we prefer to construe these claims as calling for the specific means disclosed by the patent, a spacing of the carriage supports. So construed the claims are not infringed.

The decree below simply dismissed the bill "for want of equity." For the reasons above stated this action was proper, and we do not consider it necessary to remand the cause for revision of the decree which, in its simplified form, is affirmed.