**LESTER ENGINEERING COMPANY,**
**Plaintiff,**

v.

**CLEVELAND PLASTICS INCORPO-**
**RATED et al., Defendants.**

**No. 27693.**

United States District Court,
N. D. Ohio, E. D.

Jan. 13, 1955.

John F. Oberlin, Henry A. Rocker,
Cleveland, Ohio, for plaintiff.

Andrew P. Martin, of Squire, Sanders & Dempsey, Cleveland, Ohio, Theodore S. Kenyon, of Kenyon & Kenyon, New York City, for defendants.

FREED, District Judge.

This suit involves United States Letters Patent No. 2,206,098 issued to the plaintiff Lester Engineering Company as assignee of Nathan Lester, the inventor. The patent, for which application was made on September 2, 1938, was issued on July 2, 1940. It concerns an injection assembly for plastic casting machines. The action was originally instituted against Cleveland Plastics Incorporated charging infringement of Claims 1 and 2 of the patented device. At the opening of the trial the Watson-Stillman Company was made a defendant by a stipulated order. The Watson-Stillman Company manufactures the accused device and by the above-mentioned stipulated order has adopted the answer of Cleveland Plastics Incorporated.

The answer denies infringement and further asserts that the patent is invalid. The particulars of the assertion of invalidity which merit consideration are those usually relied upon in cases of this nature. It is urged that the patent in suit is anticipated by prior patents, that the patentee was not the first and sole inventor and that the state of the art as it existed prior to the Lester invention disclosed all the elements of the patent in suit.

The Lester assembly consists of four components: a cylinder, a plunger, a spreader and a nozzle body. It is not denied by the plaintiff that these elements are old. The patent is simply a mechanical patent and the invention lies, so the plaintiff contends, in the manner in which these elements are secured together to form the injection assembly and the location of the passages through which the plastic material is forced.

To simplify and make more understandable the following description of the Lester device, it should be noted at the outset that the previously mentioned

four elements are joined in such a fashion as to make them essentially one unit. The exterior of the entire assembly is cylindrical in form and the outer walls of each component, except the plunger, are coextensive. On the nozzle body is found a small, outwardly extending, cylindrical form to which is affixed the die. Starting with the end into which the granular material is injected, first is found the pressure cylinder. Next is found the spreader assembly, and last the nozzle body through which the plasticized material is expelled into a die. The annular plunger is reciprocable within the pressure cylinder. The necessity for an annular plunger, as opposed to a solid plunger, is found in the fact that a portion of the spreader, much in the shape of and sometimes referred to in the trade as a torpedo, extends rearwardly from the body of the spreader and through the center of the pressure cylinder. This produces an annular space between this torpedo-like extension of the spreader and the inner wall of the pressure cylinder. The granular material to be plasticized is fed into this annular space and the plunger forces it toward the nozzle end of the device.

Circular holes or passages lead from this annular space through a laterally extending portion of the spreader. These holes converge toward each other from the inlet end of the spreader body and merge one into the other at the point at which the spreader is joined with the nozzle body. It follows from this converging effect that resistance to the flow of the plasticized material is reduced to a minimum and that dead spaces or pockets into which the plasticized material might find its way are eliminated. This feature provides, to some extent, against charring and burning of the plasticized material which would ultimately discolor the product sought to be cast. It also follows from this converging design that the pressure exerted on the nozzle body which tends to separate it from the spreader is effective only over this smaller area as opposed to the larger area

which would be effected if there were no converging design.

The nozzle body is constructed with a conical hole large enough at its inlet to allow the short conical tip of the spreader to extend therein with enough area surrounding this tip so as to allow a flow of the plasticized material past the tip and into the passage of the nozzle body. This passage narrows somewhat, takes a right angle bend and then extends through the small cylindrical form which extends outwardly from the nozzle body itself. This is the cylindrical form extending from the side of the nozzle body to which an earlier reference was made.

All that remains by way of description is to explain how the pressure cylinder, the spreader and the nozzle body are held together. The method is quite simple. An annular recess is found in the end surface of the pressure cylinder which faces the spreader assembly. The spreader assembly has a complementary annular projection. This projection and recess form double shoulders and present an effective seal. An annular gasket is inserted in recesses found in the meeting faces of the pressure cylinder and the spreader further aiding in a tight seal. A series of studs, countersunk in holes in the cylinder, join the cylinder and the spreader. The nozzle body is joined with the spreader in exactly the same fashion with the studs and countersunk holes located in the nozzle body.

The accused device also contains a pressure cylinder, a spreader, a nozzle body and a plunger. The plunger is of a solid cylindrical form. This plunger is reciprocable within the cylinder which houses the spreader or torpedo, but because of the plunger's solid form it may not extend over the end of the spreader as is found in the Lester device. The spreader is a torpedo-like object found within this same cylinder in which the plunger is reciprocable. At the end adjacent to the plunger the torpedo has three fins which serve to support the spreader and maintain its location in the middle of the housing cylinder. At the

other end of the spreader, the end adjacent to the nozzle body, there is found a laterally extending collar. The cylinder has a greater diameter at the nozzle body end than at the plunger end. A collar, complementary in size to the one found on the spreader is formed at the juncture of these two diameters. When the spreader is inserted into the nozzle end of the device the laterally extending collar of the spreader fits snugly into the collar formed by the cylinder walls. It may be seen that as a result of this arrangement the spreader is held in place at two points—at the one end by the fins and at the other by this collar arrangement. The threaded nozzle body is screwed into the cylinder until it becomes flush with the end surface of the spreader thus preventing the spreader from being ejected when pressure is applied to the whole device. Located in this spreader collar are several holes or passages which converge at the inlet end of the nozzle body.

■ The nozzle body, as previously related, is a cylinderical form provided with exterior threading. It screws into the cylinder which houses the spreader. A single passageway is provided within this nozzle body, which at its inlet end has a diameter equal to that of the converging passages of the spreader. The passageway narrows to a relatively small hole at its outlet.

A. The claims in suit provide:

"1. In a plastic casting device comprising a pressure cylinder, a plunger movable therein, a nozzle body, a spreader having a cylindrical wall portion located within said cylinder and forming an annular space therein, and *a laterally extending portion on said spreader, said laterally extending portion being mounted between and in contact with opposed end surfaces of said cylinder and of said nozzle body, the latter having a passage of relatively smaller cross-sectional area at its inlet end than the cross-sectional area of said cylindrical wall*

*portion, and passages through said laterally extending portion leading from said annular space to said nozzle body passage."*

B. Claim 2 adds only—

"2. * * * *said passages in said laterally extending portion converging toward each other from their inlet to their outlet ends and merging with each other at such outlet ends."*

In light of the patent's disclosures and claims together with the following comparison of the patented device and the accused assembly it will be seen that there is no infringement. While it is of no particular moment to the decision in this case, it might be stated here that the parties take opposing views as to the problem solved by the patented device. It is the contention of plaintiff that the problem confronting it was to design a device which would plasticize a new plastic. This new plastic, vinyl, was very critical of heating and would decompose and char in the prior injection assemblies. This charring resulted in high rejection rates. The defendants contend that because plaintiff uses an annular plunger, the spreader could be supported only at one end and the resultant problem was to strengthen this support.

It can hardly be contended that any part of the claims, other than those italicized, can rise to the dignity of invention. The question raised by defendants in respect to the annular plunger in the patented device as opposed to the solid plunger in the accused device can be easily answered. It is of no consequence whether the plunger is annular or solid. Both serve the same function and both operate in a similar fashion.

The critical feature of the patented device which is lacking in the accused device is the laterally extending portion of the spreader, which is coextensive with the exterior of both the pressure cylinder and nozzle body and which contains converging holes or passageways. As stated in the description of the ac-

cused device, the spreader is located *inside* a cylinder. Most certainly then there is no possibility of this spreader having a laterally extending portion co-extensive with the cylinder and nozzle body as is disclosed by the Lester patent.

The plaintiff makes the argument that the laterally extending collar of the defendants' spreader is to be taken as identical to the "laterally extending portion" of the patented device. Even by a cursory glance at the two devices it can readily be seen that the argument must fall. In this connection the claims provide that the laterally extending portion be "mounted between and in contact with opposed end surfaces of said cylinder and of said nozzle body." This part of the claim can mean but one thing: the spreader assembly is sandwiched between the pressure cylinder and the nozzle body. The disclosures of the patent can lead to no other interpretation. It must be obvious then that a spreader located within a cylinder cannot be in contact with "opposed end surfaces of said cylinder and of said nozzle body." The plaintiff contends that the shoulder formed by the juncture of the two diameters of the cylinder in the accused device, and the collar of the spreader which fits into this shoulder meet the requirements of the quoted portion of the claims. It is obvious that the claim can be given no such construction.

The patented device also includes, as stated in the claims "passages through said laterally extending portion leading from said annular space to said nozzle body" and "said laterally extending portion converging toward each other from their inlet to their outlet ends and merging with each other." Because the accused device does not have a laterally extending portion within the meaning of the claims of the patent in suit it should be quite obvious that it may not have the passages set forth in the claims. While this alone would avert infringement as to this feature of the claims, further examination discloses that the passageways found in the collar of the accused device are not the same as those found in the Lester patent. The passageways found in the patented device are an integral part of the spreader and extend the full length of the laterally extending portion of the spreader. The plastic material as it passes through the spreader in the patented device is always confined to these enclosed passageways. The plastic material in the accused device has a free flow and is not confined to any enclosed passageways as it travels past a greater portion of the spreader. Only when the plastic material reaches the collar on the accused device is it confined to separate passageways.

 It is apparent from the foregoing that the accused device does not infringe. The Court agrees with the assertions and law as stated in the defendants' brief to the effect that:

"The claims must, axiomatically, be read in the light of the specification. Every element claimed is essential, for if any one be omitted in the accused device without the substitution of an equivalent there can be no infringement. There is no infringement of a combination claim unless the infringer uses the *entire* combination. United States Rubber Co. v. General Tire & Rubber Co., 6 Cir., 1942, 128 F.2d 104, 109; Wood v. Peerless Motor Car Corp., 6 Cir., 1935, 75 F.2d 554, 556; Directoplate Corporation v. Donaldson Lithographing Co., 6 Cir., 1931, 51 F.2d 199, 201, 202."

██ However, decision here need not rest alone on non-infringement, but may also be founded on the conclusion that the Lester patent is invalid for lack of invention, both by itself and in view of prior patents and uses.

Before proceeding, it is pertinent to note at this point that if the claims are construed as plaintiff contends, so as to include the accused device, the claims are indistinguishable from the con-

ventional solid plunger devices shown by the Hyatt and Gastrow patents (to which more specific reference will be made) and if construed literally so as to limit the patent to the precise assembly disclosed the accused device does not infringe.

Without giving any consideration to the prior patents or the prior use of a similar device by the Reed-Prentice Corporation, it is plain that the patent is invalid for lack of invention. Up to this point no mention has been made of the heating components of this assembly for the reason that they are not claimed or disclosed by the patent. The heat plus the pressure is necessary to plasticize the granular material which is injected into the machine. With this in mind look again at the patent in suit. Stripped of all unnecessary verbiage the device is simply a plunger, reciprocable within a heated cylinder and a passage in that cylinder for transporting the plasticized material to a die. This most certainly falls short of a patentable invention as contemplated by the Constitution and statutes of the United States. By all the standards which distinguish invention from mechanical skill, this definitely is mere mechanical skill.

The plaintiff has admitted that the component parts of its injection assembly are old. The Court is of the opinion that the combination of these old elements as disclosed by the Lester patent produces no new function. The function is to plasticize granular material. This being so, what was said in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, is particularly pertinent and controlling:

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

In view of that which has already preceded, little time need be spent on referring to prior art patents. Hyatt Patent No. 133,229, issued November 19, 1872 was a device for manufacturing proxyline. The device consists of a cylinder in which a solid plunger is reciprocable. Inside the cylinder and located at the outlet end is found a pronged spreader and adjacent to the spreader is a nozzle. There can be no argument that this spreader is of radically different design than the spreader in the Lester patent. There also can be no doubt that the genesis of each element of the Lester patent is anticipated by the Hyatt assembly. Each has a cylinder, each has a plunger reciprocable therein, each has a spreader and each has a nozzle. A fiberous material is injected into the Hyatt device and the plunger forces it through the cylinder, past the spreader and through the nozzle. It can be seen that the elements and the function of Hyatt are identical to those of Lester. Applying the test as delineated by the Supreme Court it is clear that the Hyatt patent anticipates the patent in suit.

Passing from 1872 to the year 1933, we find that in that year Gastrow applied for a patent. It was issued October 20, 1936 as Patent No. 2,057,945. That device also contains a cylinder, a plunger reciprocable therein, a spreader and a nozzle. The assembly was designed to plasticize powdered material. The spreader in this device is similar in form to a torpedo and is held in the outlet end of the cylinder by means of thick protruding ribs which fit against the cylinder's interior wall. The powder to be plasticized is injected into the cylinder, the plunger pushes the material forward and over the tail of the spreader. As the material reaches the head of the torpedo it flows between the grooved areas

formed by the protruding ribs and the inner surface of the cylinder wall and then converges and passes through the nozzle. The only improvement that Gastrow provides over Hyatt is that the spreader is streamlined and thus the resistance to flow is lessened. It should be noted that in the Gastrow device there are several converging passageways through which the plasticized material flows just as is found in the Lester device. Most certainly this device anticipates the patent in suit.

The only distinction between both Hyatt and Gastrow and the Lester patent is that Lester provides for a lateral extension of the spreader. That is, the spreaders of Hyatt, Gastrow, and for that matter, of the accused device, are located inside a cylinder. The Lester spreader has its exterior wall coextensive with the pressure cylinder and nozzle body. This feature is the product of mechanical skill.

There are several other prior patents which defendants contend, and which contention is well-founded, anticipate the Lester patent. Most of them are devices for extruding metal. While the processes involved in extruding metal and manufacturing plastics are similar, there is no reason to extend this already lengthy memorandum in order to apply the devices to this suit when it is clear that other prior patents which are limited to the plastics field anticipate the Lester device.

The answers to the questions raised are therefore obvious. The patent in suit was anticipated by prior patents, the patentee was not the first and sole inventor and the state of the art as it existed prior to the Lester device disclosed all of its elements.

Because the accused device does not infringe and because the Lester patent is invalid the complaint must be dismissed.