## LEKTOPHONE CORPORATION *v.* THE ROLA COMPANY.

## MILLER BROTHERS COMPANY *v.* LEKTOPHONE CORPORATION.

Nos. 19 and 68. Argued November 26, 1930.—Decided December 8, 1930.

*Mr. William H. Davis* for the Lektophone Corporation.

*Mr. Thomas G. Haight,* with whom *Messrs. Charles E. Townsend, William A. Loftus,* and *Theodore S. Kenyon* were on the brief, for the Rola Company.

*Messrs. Samuel E. Darby, Jr.,* and *Theodore S. Kenyon* for Miller Brothers Company.

MR. JUSTICE HOLMES delivered the opinion of the Court.

These are two suits brought by the Lektophone Corporation alleging the infringement of a patent. In the first named, No. 19, in the Ninth Circuit, the decision was for the defendant, 34 F. (2d) 764, affirming the decree of the District Court, 27 F. (2d) 758, and declining to follow the Third Circuit's decision in *Lektophone Corporation* v. *Brandes Products Corporation*, 20 F. (2d) 155. A writ of certiorari was granted by this Court, 280 U. S. 551. Later, the second of the suits before us, No. 68, was brought in the Third Circuit, and the District Court, in obedience to the precedent there, decided for the plaintiff, 37 F. (2d) 580. An appeal was taken to the Circuit Court of Appeals. A writ of certiorari was granted by this Court without the formality of awaiting the result. 281 U. S. 713.

The patent is No. 1,271,529, granted July 2, 1918, to Hopkins, assignor, by mesne assignments, to the Lektophone Corporation; the original application having been filed July 14, 1913, in the time of the phonograph and before the days of radio, for an " Improvement in Acoustic Devices." The object is the " direct propagation, in free air, from a record or equivalent element subjected to the action of the original sound waves or vibrations, of self-sustaining sound waves substantially corresponding in intensity and amplitude, as well as in pitch or timbre, to the said original sound waves "; as distinguished from the then prevailing use of the sound box and horn. The device, as set forth in claim 8, comprised " a tympanum embodying a bodily movable, central conical portion, and an annular rim which encircles said conical portion and which is rigidly supported, said conical portion being freely exposed on all sides to unconfined air and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated." On the question

what is a sufficient area the patent says, " If satisfactory regeneration by sounds from a record or other sound-vibrated element is to be had, the whole diameter of the tympanum, that is, the diameter of the aperture in the rings [that rigidly clamp the edges of the tympanum] should exceed nine inches." " The diameter of the base of said conical portion should be at least eight-tenths of the diameter of the said aperture "—with further details. Paper is pronounced a satisfactory material, the requirement being that it should be crisp and strong and have considerable rigidity within itself.

The state of the art at and before 1913 will be found in the cases already cited, two excellent discussions by Thacher, D. J., in *Lektophone Corporation* v. *Western Electric Co.*, 20 F. (2d) 150 and Hickenlooper, D. J., in *Lektophone Corporation* v. *Crosley Radio Corporation*, Southern District of Ohio, not reported, and in the English case of *Lektophone Corporation* v. *S. G. Brown, Ltd.*, Ch. Div., January 23, 1929; Court of Appeals, July 12, 1929. It is unnecessary to repeat, because it is conceded that the conical tympanum and material were known in connection with a sound box for the phonograph of which Hopkins was thinking, as shown by the words ' from a record ' quoted from the patent. The effect of increasing the size of the cone also was known. The contribution of Hopkins, if he made one, as held in several cases in the lower Courts and abroad, was to combine abandoning the sound box, determining the size of the cone deemed by him most suitable to reproduce the sounds communicated to it by vibration, and tightly gripping and rigidly supporting the outer edge of the above mentioned annular rim of the cone between two rings. A result claimed for the rigid support, although seemingly not thought of at the time, is to avoid interfering sounds, ' blasting ' and rattling, that were made when the edge of

the cone was loose. As said by Hickenlooper, J., "All of these elements in combination went to make up the novelty of his alleged invention." "To the size, shape and proportion thus disclosed the patentee is limited by the prior art and the very essence of his invention." If the patent was valid it must be confined narrowly to the combination described.

In No. 19 the defendant's device is very like that of the plaintiff but differs in at least one particular. The plaintiff's cone, of crisp, strong, more or less rigid material, is continued in one piece under the rings that give it a rigid support. Its tympanum includes this outer edge. On the other hand, as said by Judge Thacher about another contrivance, "the defendant's structure, although it comprises a tympanum support having a circular aperture, does not comprise a tympanum having its outer edge rigidly mounted on said support in said aperture within the meaning of claim 4. Nor does it comprise an annular rim which encircles the conical portion of the tympanum within the meaning of claim 8." *Lektophone Corporation* v. *Western Electric Co.*, 20 F. (2d) 150, 154. The defendant's tympanum is only the paper cone, distinct from the rim. The rim is made of limp leather. In view of the importance attached to this element in the plaintiff's patent it is impossible to say that it is infringed. To quote again from the last cited case, " to hold that the defendant's device comprises 'a tympanum rigidly supported at its periphery' within the meaning of the claims is to construe the claims contrary to the plain import of their terms." *Ibid.* There are other questions that would have to be answered before the plaintiff could prevail, such as the difference in size, argued in this case, 27 F. (2d) 758, 760; s. c. on appeal, 34 F. (2d) 764, 773; the size being regarded by Hopkins as of the essence of his invention. But we think the matter too plain to need

more words. The same conclusion applies to the second case where the rim is made of cloth.

*Decree in No. 19 affirmed.*
*Decree in No. 68 reversed.*

The CHIEF JUSTICE took no part in the decision of these cases.