GAT GUN LUBRICATING CORPORATION et al. v. ADAMS GREASE GUN CORPORATION.

No. 403.

Circuit Court of Appeals, Second Circuit.

June 6, 1932.

Lynn A. Williams, of Chicago, Ill., Stephen H. Philbin and Fish Richardson & Neave, all of New York City, and Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for appellants.

Henry T. Hornidge, Alfred W. Kiddle, William J. Dowd, and Kiddle, Margeson & Hornidge, all of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

### L. HAND, Circuit Judge.

The patent in suit is for a portable "grease gun" to drive grease, more or less viscous, through the bearings of an automobile or other similar machine. There had been other such before, but the invented improvements were designed to set up much higher pressures. The "gun" is made up of two parts, a cylinder with a reciprocating plunger, and a receptacle for holding the grease, mounted upon the cylinder at right angles, detachably, so that it may be taken off and filled and then remounted. It communicates by a port with the cylinder, which the grease fills, as described in a moment. After the cylinder is filled, the plunger, normally held in withdrawn position by a spring, may be manually advanced. Its first action is to close the port, leaving no outlet in the cylinder except into the lubricating system through a check-valve. The cylinder and plunger are so designed as to set up very high pressures; this by means of a pistol grip not necessary to describe, since the claim in suit does not involve it and the defendant does not use it. Some means is obviously necessary to secure the entrance of the grease from the receptacle to the cylinder and this is the nub of the case at bar. The reciprocation of the plunger, which creates some vacuum in the cylinder, will at times effect this, but it is not reliable. Hence it is necessary to supplement its action positively in the receptacle itself. This is done by a piston actuated by a spring which bears at one end upon the rear end of the receptacle, and at the other upon the rear face of the piston. As the piston is carried by a rod which passes through the rear end of the receptacle, it may be withdrawn, compressing the spring in its course. At the end of its traverse the rod is held by a latch on the outside of the receptacle, which engages in a notch in the rod and holds the piston at the rear end, leaving open the receptacle to be filled. After filling it is reattached to the cylinder and the latch released. The spring thereafter presses the piston against the grease, thus assuring a continuous flow into the cylinder until the receptacle is emptied.

Claim two, the only one in suit, is as follows:

"2. A lubricating device comprising a cylinder having a bore and an inlet port and a discharge passage, a plunger reciprocating within said bore, a lubricant receptacle attached to and depending from said cylinder and having its interior communicating with said bore through said inlet port, a spring actuated piston within said receptacle for feeding the lubricant within the receptacle through said inlet port into said bore of the cylinder, means for locking said piston against movement in the said receptacle, and means connected to said plunger and cylinder for reciprocating said plunger within the bore to withdraw the lubricant from said receptacle into said bore and eject the lubricant from the bore through the discharge passage."

The supposed infringement is so like the disclosure in respect of the cylinder and plunger as to be clearly an infringement, for, although it does not work with a pistol grip, and the plunger is not automatically withdrawn by a spring, the claim in suit does not contain those features, as we have already said. It has also a receptacle, set at right angles to the cylinder, to which the grease is admitted by a port which the plunger closes at the beginning of its advance. But the mechanism by which the grease is driven out of the receptacle is different, and it is upon this that the defendant relies for its defence. The receptacle contains a piston, it is true, mounted upon a rod which projects through its rear end; but the piston may be fairly described as merely cushioned. It is made up of three parts; first, there is the piston proper which slides upon the rod, being held from moving off its end by a nut; next is a spring, bearing at its forward end upon the rear face of the piston; finally, a collar, made fast to the rod, acts as the other abutment of the spring and holds it under substantial compression even after the piston proper

abuts upon the nut. The three members as a whole constitute a cushioned piston, which has no proper motion of its own in the receptacle. To move it the rod must be manually advanced or withdrawn from the outside, withdrawal being however prevented by a latch which impinges on the rod.

In operation the latch is loosed and the rod withdrawn till the collar abuts upon the rear end of the receptacle. In this position the piston is inert; that is to say, no spring drives it forward; the receptacle may be filled with grease without the piston's being held in place, for the spring is out of action. The receptacle when filled is reattached to the cylinder, but the machine is no more ready for operation than the patent in suit before the latch is released. Instead however of releasing the latch, the operator must manually push the rod forward in the receptacle. This he continues till the spring between the collar and the piston has been compressed, the piston moving away from the nut. The latch meanwhile holds the rod against withdrawal, and in consequence the force of the spring, acting upon the piston, exerts a pressure upon the whole column of grease. As the plunger exhausts grease through the check-valve, its place is filled by grease flowing from the receptacle, and the piston moves forward till it again abuts upon the nut. The cycle is completed and the rod must again be pushed forward by another step. Thus the spring acts successively by a series of forward thrusts; at no time is it held back, except in so far as the nut stops it at the completion of each cycle. Still it is true that after a thrust the spring presses the piston against the column of grease, abutting at its rear end against the receptacle, through the mediation of the collar, rod and latch. So far the operation of the two is alike.

The question of infringement depends upon whether the "gun," just described, embodies that feature of the invention which is defined by the words of the claim, "means for locking said piston against movement in the said receptacle." The judge thought that it did not, and dismissed the bill for that reason. Verbally the defendant's latch does indeed lock the piston against movement; but only against backward movement. True, the latch of the patent in suit also locks the piston against that movement—though it need not—but it locks it against forward movement as well, and it is plainly this and this alone, which the claim means. Without it the gun would in practice be inoperable; no sooner were the rod released from the out-

side, than the whole contents of the receptacle would be pushed out and lost. Not so in the defendant's "gun," whose latch never restrains the spring from forward movement. The spring has no effect whatever until the rod is thrust forward; it loses what effect it has, as soon as the piston reaches the nut, and the rod must again be pushed. It is never unlatched at all, in the sense that it is set free for a movement beyond its latched position.

To escape the obvious difficulties involved, if the defendant's latch is read as the "means" of the claim, the plaintiff resorts to the nut at the end of the rod. This it says is functionally a means to prevent forward movement of the piston under pressure of the spring, precisely comparable to the action of the latch in the disclosure. Except for the nut, the piston would be driven forward and keep up a further pressure upon the grease; for the spring even at its utmost expansion is under a compression of nearly three-quarters of an inch. A curious consequence of this position would be that, if the spring were not under any compression; if, for example, it merely filled the space snugly between the collar and the piston, when the piston was in contact with the nut, there would be no infringement; and so far as we can see, if the spring were made stiffer, the "gun" would operate as well in this way. However, we cannot decide the case upon this possibility; we must meet the argument based upon the defendant's gun, as it is actually made. The latch of the patent holds back the piston from operation; the nut of the defendant merely limits its effective travel; it never unlatches the spring at all. This is not because further movement of the piston is unnecessary, but because such movement would disassemble the mechanism. We might assume that the function of the spring was the same in each, as we have already suggested. The fact that its operation must be by successive steps, may not be final. But all the elements of the claim must be satisfied; it is clear that the nut does not release the spring for functional operation, and that is what the claim demands.

■ No doubt courts have wrenched the language of claims more than is necessary to include the defendant's "gun" within the claim in suit. Were this a wide step forward —a "pioneer" patent—the product of commanding originality, we might do so here. In such cases ordinary rules for the interpretation of written instruments fall into abeyance, however judges may give them lip service. Claude Neon Lights v. M. E. Machlett

& Son, 36 F.(2d) 574 (C. C. A. 2); Directoplate Corp. v. Donaldson, etc., Co., 51 F.(2d) 199 (C. C. A. 6). But there is no excuse here for so much latitude; for such a departure from the clear meaning of the claim, when read upon the disclosure. Nelson's invention was no more than an adaptation of Wood, (No. 1,349,994), which indeed claim two would cover except for two features; the latch and the "dependency" of the receptacle. True, Nelson made a portable machine while Wood's was a heavy contrivance to which the automobile must be brought. But the claim did not rely upon portability, and scarcely could have passed, if it had. The "dependency" of the receptacle is hardly more than a matter of design; it certainly does not imply that the "gun" shall be portable. Thus it is only by virtue of the latch that the claim can survive at all.

As we have already suggested, it may be that, if Wood has appropriate claims, they would cover the defendant's "gun"; that the mere fact that its spring operates intermittently would not avoid infringement. Arguendo, we may so assume. But that is Wood's advantage, not Nelson's. He must show that a putative infringer embodies not only all of Wood, but that element by which alone his disclosure makes a patentable advance beyond Wood. Since that element is absent in every sense, has indeed no color of equivalent, he fails. Thus, though the difference between the "guns" is trifling, it is crucial, since it touches the spot vital to the claim, and this in turn because the patent is itself so much limited, Lektophone Corp. v. Rola Co., 282 U. S. 169, 51 S. Ct. 93, 75 L. Ed. 274.

Decree affirmed.