## DILLON PULLEY CO. v. McEACHRAN et al.
### No. 6368.

Circuit Court of Appeals, Sixth Circuit.
Feb. 16, 1934.

---

[1] The late Circuit Judge HICKENLOOPER, in conference, dissented from the conclusion herein expressed.

The patent in suit relates to pulleys for sash cords, and its objects are to provide a novel and improved support and casing, constructed and arranged to guide the cord, prevent it from slipping off the pulley, provide complete protection to the pulley and cord, facilitate ready installation, and the holding of the casing sections assembled. The grant is defined in the single claim printed in the margin.[1]

The invention relates to a pulley of the inclosed type. Inclosed pulleys were not new, either in the general art or in the more restricted sash pulley art. Guide openings in the pulley housing were also old. There was no novelty in dividing sash pulley housings transversely and off center into two separate sections having abutting flanges; some such division of the casing was imperative in order to permit the installation of the pulley wheel. Sash pulleys were sometimes inclosed at the rear, sometimes only at the front. Abutting flanges were held together by attaching screws passing through the flanges, or by seating one flange into a recess in the base of another flange or base plate.

It is unnecessary specifically to consider all of the references in the prior art which may appear pertinent. Enough has been said to demonstrate that the patent was in no sense generic, nor is any pioneer character claimed for it. Whether the patent is held valid, or its validity merely granted for the purpose of deciding the question of infringement, it must be recognized that the invention marks but a limited forward step in the art. How small the advance is illustrated by the history of the application in the Patent Office, and by the limited success that followed its commercial exploitation. When the application was first filed, it contained five claims. They were all rejected as not differing patentably from Wells, 393,281, Ballew, 818,335, and Zamboni, 828,698. The inventor acquiesced, and canceled the claims. He filed a new application entering a single claim, and stressing that element in the combination which involved the seating of one flange with reduced ends into the base plate of the other section, whereby perpendicular and sidewise slippage of the two casing sections relative to each other is effectually prevented. This claim was likewise rejected by

D. H. Sweet, of Chicago, Ill. (Freeman & Sweet, of Chicago, Ill., and Freeman & Weidman, of Cleveland, Ohio, on the brief), for appellant.

I. J. Wilson, of Chicago, Ill. (Wilson, Dowell, McCanna & Rehm, of Chicago, Ill., and Evans & McCoy, of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The suit below was for infringement of two patents for window sash pulleys, the first patent being to J. J. Dillon, No. 1,224,152, issued May 1, 1917, and the second being patent 1,625,640, issued to J. H. Dillon, April 19, 1927. The trial court found the first patent not infringed, without decision as to its validity, and the second patent invalid as to all claims in suit. Acquiescing in the latter finding, the appellant has not appealed therefrom, and has filed disclaimer. The appeal is from that portion of the decree below which holds the J. J. Dillon patent not infringed.

---

[1] The combination of a sash cord pulley, and a guide for the sash cord, said guide comprising a casing inclosing the pulley and divided transversely and off its center into two sections, the meeting ends of the sections having outstanding abutting flanges, the flange of one section having a recess in its face in which recess the flange of the other section seats, the ends of the recess being reduced in width and the ends of the last-mentioned flange being shaped to fit in said reduced ends of the recess, and fastening means passing through the flanges of the casing sections, each of said sections comprising a bottom, a top, side walls and an end wall, the larger section supporting the pulley and its bottom having a guide opening for one end of the sash cord, and the bottom of the smaller section being provided with a guide opening for the other end of the sash cord.

146

the Examiner as calling for no exercise of the inventive faculty over Wells, and also because anticipated by Garretson, 68,868. Again the patentee acquiesced, canceled his claim, and substituted another single claim. In this there were added to the elements of the rejected claim elements involving sections of the casing, each comprising a bottom, a top, side walls, and an end wall, the larger section supporting the pulley and its bottom having a guide opening for one end of the sash cord, and the bottom of the smaller section being provided with a guide opening for the other end of the sash cord. This new claim was allowed.

The patent was granted in 1917. For four years it remained a paper patent. In 1921, according to the single witness for the plaintiff, roughly a thousand pulleys, claimed to embody the invention, were put upon the market. They were sold promiscuously to the trade in small orders during the latter half of 1921 and the early part of 1922. No more were made, and, after they had been upon the market six or eight months, their sale was discontinued. Whether any were resold by the trade, or were actually installed in window frames, does not appear, and when it is considered that four pulleys are required for each window of usual construction, and that a single small house might well have from twenty to thirty windows, it cannot be said that Dillon filled a long felt want, solved a problem which had long defied solution, or substantially affected the pulley industry. It is significant also that when the Dillon pulley, as illustrated by its only exhibit (Exhibit 6), was finally and experimentally put upon the market, it departed sharply from the teachings of the patent, and the functional purposes of a number of elements recited in the claim, and stressed in the Patent Office, were sacrificed.

The flanges of Exhibit 6 are spot welded to each other. There are no fastening means passing through the flanges of its casing sections, the screws being merely mounting means for attaching the casing to the window frame. The recess with its reduced ends in the face of the one flange, within which the opposing flange with its reduced ends seats, has no functional value, and it seems quite clear that the building up of the recess by spot welding semicircular pieces at the ends of one flange is nothing more than a colorable concession to the drawings of the patent, without either functional necessity or result.

■ We have recited so much of the commercial history of the patent, not as demonstrating its invalidity, but as an aid in defining its scope, fully recognizing that commercial success is not conclusive, and that a presumption of validity may arise equally from the commercial success of an infringer as from the commercial success of the patentee or his assigns. Fox Typewriter Co. v. Corona Typewriter Co. (C. C. A.) 282 F. 502, 511. But in such case the success of an accused device is cogent testimony supporting a presumption of validity only when the fact of infringement is recognized by a comparison of the accused structure with the patent. Commercial embodiments which depart from the teachings of the patent are of little aid in solving problems either of validity or infringement. We are content, as was the court below, to concede validity to the patent, but in view of the prior art and the patent's history, the claim must be construed narrowly, and such limitations as the patentee specifically made in matters of form, structure, and function of the elements of his claim, should not be departed from in determining the question of infringement. Directoplate Corporation v. Donaldson Lithographing Co., 51 F.(2d) 199 (C. C. A. 6); Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C. C. A. 6). Where there is an express limitation in the claim, there is no ground for application of the doctrine of equivalents if the accused device departs from the claim in that particular. Lektophone Corporation v. Rola Co., 282 U. S. 168, 51 S. Ct. 93, 75 L. Ed. 274; D'Arcy Spring Co. v. Marshall Ventilated Mattress Co. (C. C. A.) 259 F. 236, 240.

■ We come then to the several structures of the defendant. The abutting flanges of the defendant's device are of unequal width, and are fastened together by crimping the edges of the wider flange or base plate around the edges of the flange of the main casing section. The two flanges are thus securely fastened, requiring no other fastening means. It is urged that this circumferential crimping of the base plate results in a recess in its face within the meaning of the claim. Without indulging in the linguistic subtleties urged upon us by the appellant, it is sufficient to say that in the sense in which the recess is described in the specification, illustrated in the drawings, and claimed as an element in the combination, there is no recess in the face of the base plate of the accused devices, and that the functional purpose of the recess recited in the patent is not served by the fastening means employed by the defendant.

The most important elements of the patented combination are the casings, the self-imposed limitations of which alone brought about the allowance of the claim over the prior art. Each casing is described as comprising a bottom, a top, side walls, and an end wall, the bottom of the larger section having a guide opening for one end of the sash cord, and the bottom of the smaller section being provided with a guide opening for the other end of the sash cord. The smaller casings of accused devices have no bottom. It is urged by the plaintiff that the claim contains no limitation requiring a bottom wall in the patented construction, and that a device, like a coal chute, may have a bottom even in the absence of a bottom wall. But the claim describes more than a bottom in that sense. It describes a bottom provided with a guide opening for the ends of the sash cord, and it is rather difficult to conceive of a bottom being provided with an opening unless it is a wall. There being no wall, there is no need of providing an opening, and without a limited opening, there is no guide. Similarly the claim does not specify a top wall, but merely a top. Clearly a top wall is meant, for without it the pulley loses its characteristic as one of the inclosed type. Moreover, the drawings illustrate a bottom wall, and the plaintiff's commercial embodiment expresses its own interpretation of the claim, for Exhibit 6 has a bottom wall provided with an opening which is a guide for the sash cord. The accused construction has neither bottom wall nor guide openings in the bottom, and while there is a guide, it is elsewhere located. Again we are met by an extended argument based upon nice linguistic distinctions. Again it is only necessary to say that in the sense that bottom is used in the claim, there is no bottom in the accused devices.

Again, the patent calls for a casing inclosing the pulley, which is divided transversely and off its center into two sections, the outstanding abutting flanges of the sections having fastening means passing through them. The structures of the defendant are unitary, the two casing portions being permanently held together as already described. The crimping being the fastening means, there are no fastening means passing through the flanges of the casing sections. It is true that Exhibit 6 has its casing sections permanently attached to each other by spot welding, but when they are so attached its wood screws become merely mounting means rather than fastening means passing through the flanges, and, as we have already indicated, the question of infringement must be determined by a consideration of that which is the invention, and for which monopoly was granted. The public is not excluded from the use of elements not claimed, even if such elements either alone or in combination are patentable.

It is a recognized principle of the patent law that the omission of any element in a patented combination avoids infringement. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100; Union Paper Bag Machine Co. v. Advance Bag Co. (C. C. A.) 194 F. 126, 138; Jones v. General Fireproofing Co. (C. C. A.) 254 F. 97, 101; Michigan Engine Valve Co. v. Monarch Manufacturing Co. (C. C. A.) 233 F. 107, 110. And this is especially true where the limitation is as to form. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., supra. The tests of equivalency where the patent is not a generic one have been recently discussed by us in Chicago Forging & Manufacturing Co. v. Bade-Cummins Manufacturing Co. (C. C. A.) 63 F.(2d) 928.

The decree below is affirmed.