### SHEARER v. ATLAS RADIO CO. et al.
### No. 7288.

Circuit Court of Appeals, Sixth Circuit.
Jan. 10, 1938.

William L. Day, of Cleveland, Ohio (Day & Day, of Cleveland, Ohio, and L. G. Worstell, Jr., of Athens, Ohio, on the brief), for appellant.

Dexter N. Shaw, of Philadelphia, Pa. (John B. Hull, of Cleveland, Ohio, and Charles H. Howson, of Philadelphia, Pa., on the brief), for appellees.

Before MOORMAN and HICKS, Circuit Judges, and NEVIN, District Judge.

HICKS, Circuit Judge.

Suit by Ray Reginald Shearer, the patentee-owner, against Atlas Radio Company, a retail dealer in Cleveland, Ohio, and Philco Radio and Television Corporation, a sales company and distributor for Philco radios, for infringement of claim 1 of patent No. 1,917,554, issued July 11, 1933, for an "Article of Furniture."

The claim is printed.[1]

The chief defenses were noninvention, noninfringement, and anticipation. The court did not rule upon the issue of validity but considered the question of infringement, found there was none and dismissed the bill.

The patent relates to articles of furniture such as desks, highboys, etc., into which radio receiving sets and speaker units are incorporated. Early speakers were horn-shaped, the sound proceeding from the small end to the listener through the flared portion. But these horns had the weakness of producing dissonances.

To offset these undesirable tonal. qualities, a speaker diaphragm in the shape of a flattened cone was devised. Both the convex and concave side of the cone gave off sounds and as a result some of the lower frequency tones offset each other and could hardly be heard. In order to give strength to these "short circuited" tones, the cone was mounted on a "baffle" board which had the effect of delaying the meeting of the offsetting sounds from the two sides of the cone sufficiently that their depressing effect upon each other tended to be obviated. Rice (patent No. 1,631,646, June 7, 1927) worked out a formula for the size and placement of the baffle whereby the proper delay in the passage of sounds could be achieved.

But mounting the baffle board in a cabinet involved a tendency to compartmentalize the space on either side of it. It was then found that if the rear compartment was too tight the air compressed against the diaphragm cone at certain frequencies, preventing its free vibration and dampening certain tones. Other low frequency masculine tones reacted on the air in the compartment to produce a strong and displeasing resonant effect. For present purposes resonance may be defined as the enhanced response of a vibrating body to its own natural frequency.

To control resonance, Beers, six years later than Rice (patent No. 1,902,609, March 1, 1933), suggested leaving the cabinet substantially open at the rear, providing openings around the baffle, and between it and certain of the walls of the cabinet. His third claim read:

" * * * said cabinet being substantially open at the back, said device being supported within the cabinet by said baffle, certain of the edges of said baffle extending only into proximity to the interior sur-

---

[1] "1. A cabinet having a compartment for a speaker unit, said compartment being formed by four walls comprising a top wall, two side walls and a partition wall dividing said compartment into two sub-compartments by being connected to the top wall and the said side walls whereby one of said sub-compartments has only four walls including the partition wall and thus forming a resonance chamber and a speaker unit mounted in the other of said compartments, the speaker unit being arranged in said last named sub-compartment to entirely close a large opening formed in said partition wall whereby the speaker unit will direct the sound produced thereby to said resonance chamber."

faces of certain of the walls of said cabinet, whereby said cabinet is prevented from accentuating said frequencies during actuation of said sound reproducing device."

As early as 1929 and 1930 appellees' licensor in perfecting its Model 302, and using a baffle board mounted flush with the front of the cabinet and thus forming a rear compartment, found that it could reduce resonance by boring large holes in the bottom wall of the compartment and later it was found that the bottom wall could be eliminated altogether. This model was mounted on legs, allowing the free passage of sound underneath.

So far we have dealt with the problem (1) of controlling the low frequency sounds produced by the two sides of the cone; and (2) of eliminating resonance in the rear compartment. It was found desirable not only to delay the passage of sounds from one side of the board to the other, but necessary to furnish them with some outlet; otherwise resonance would result. The baffle board met the problem of delay and opening the compartment at the rear and underneath seems to have eliminated excess resonance.

There had been no particular problem of resonance in front of the baffle board, since it had been the prevalent practice to mount the board either flush with the cabinet front as in Model 302, or at the back of a very shallow opening front compartment, as in Beers and in Sprague (No. 1,875,171—1932).

Into this technical field appellant projected himself by accident. In locating a radio chassis in one of his furniture models he moved it back and forth in the space, which would accommodate the feet of one using the cabinet as a desk, and found a difference in tonal qualities at various positions. His alleged discovery is embodied in claim 1.

The claim lacks precision. It calls for a compartment "formed by four walls" and divided by one of them into "two subcompartments." This is meaningless. Obviously a compartment cannot be both formed and divided by the same wall. By reference to the specifications we find that the large compartment was composed of three walls only, the top and two sides, and that the fourth wall is a partition dividing it into two parts. The large compartment was the "box with the ends knocked out and the bottom knocked out" as described by appellant's expert. The

drawings and specifications indicate that appellant is making claim to a subcompartment in front of the baffle board, open at the front and to the floor.

Appellant's patent was a paper patent. It was never sold nor used, although he brought it to the attention of radio manufacturers. His advance in the realm of audition was but a short one and consisted in the main of applying the same treatment to the space in front of the baffle board which had theretofore been applied to the space in its rear.

■ Assuming, without deciding, that the claim is valid, we think that it should be narrowly construed.

■ Appellees' alleged infringing device is the 16X model. Literally, the claim in issue reads upon its construction, but appellant's subcompartment is also specifically defined in the claim as "forming a resonance chamber" and we are not permitted to disregard this limitation. Lektophone Corporation v. Rola Co., 282 U.S. 168, 51 S.Ct. 93, 75 L.Ed. 274; D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240; Dillon Pulley Co. v. McEachran, 6 Cir., 69 F.2d 144, 146. We think that appellant regarded this "resonance chamber" as the principal feature of his invention. In his specification he states: "When the speaker soundboard 50 is located as above described, it divides the recess or compartment 30 into two subcompartments, the front of which *comprises a resonance chamber* and the other of which is adapted to receive the speaker unit. * * * Such a construction has been found to add a desirable resonant quality to the tone of the loud speaker, resulting in a more pleasing sound than where the speaker soundboard was mounted directly at the front of the cabinet, as has been customary in the past." (Italics ours.)

The evidence tends to show that appellant's front subcompartment was in fact a resonance chamber, but it fails to show by a fair preponderance that the front cavity or subcompartment of appellees' Philco 16X was likewise a resonance chamber, and indeed, we think that the evidence shows that it was not. This alleged infringing model was manufactured under patent No. 1,866,603, July 12, 1932, to Schlenker for an acoustic device. Schlenker had a different type of diaphragm mounted on the usual baffle board. His patent disclosed a cavity in front of the

board, wedge-shaped, in cross-section. The board was mounted an inch or so from the front of the cabinet and leaned back at an oblique angle to the floor, being secured along its edges to the walls on either side. The upper edge was perhaps six or seven inches from the front of the cabinet. In support of the oblique-positioning of the board it was shown that since the tones proceed from the speaker at right angles to the baffle board when vertically mounted, and therefore parallel with the floor, they move in a plane lower than the ears of the listener in the ordinary living room, but, tilting the board backward allowed them to proceed upward at an angle and hence into the range of the listener's ears.

The leaning baffle boards of Schlenker and of appellees' Philco 16X model were not intended as any part of a front resonance chamber. They had to do only with the direction of sound waves. Appellant's expert does not characterize the forward cavity in Philco 16X as a resonance chamber. Elaborate tests conducted by appellees' experts, among them Schlenker himself, demonstrate rather clearly that the front cavity of the Philco 16X model had no effective resonance. Its area and peculiar shape were not conducive to resonance. We concur therefore in the opinion of the District Judge that there was no infringement of the claim in issue.

Appellees' model 16X rests directly upon the floor and appellees insist that the floor constitutes its bottom wall and that it is thus differentiated from appellant's construction, which has an open bottom. We find no necessity for considering this contention.

The decree of the District Court is affirmed.