## WHEAT v. FORD MOTOR CO.
### No. 2267.

District Court, W. D. Missouri, W. D.

Feb. 2, 1939.

Everett R. Meyer and Martin J. O'Donnell, both of Kansas City, Mo., for plaintiff.

Madden, Freeman & Madden, of Kansas City, Mo. (I. J. Farley and Thomas J. Hughes, both of Detroit, Mich., and Frank Parker Davis, of Chicago, Ill., of counsel), for defendant.

REEVES, District Judge.

The plaintiff claims that the defendant has infringed his patent numbered 1,394,-242. The specific charge of infringement is that, plaintiff's patent covering means for lowering the body of automobiles, the defendant, by its structures, has used equivalents in building automobiles with lower bodies.

Adverting to the patent, the object thereof is stated to be as follows: "This invention comprehends the provision of an underslung attachment for motor vehicles, and is primarily designed for Ford cars; the object being to lower the body of the car so that it will hold the ground or surface when traveling at a high speed. The invention being particularly useful for Ford racers and speedsters."

To effectuate this object, plaintiff made claims substantially as follows: "1. An underslung attachment * * * comprising means for supporting the rear spring of the machine whereby the terminals thereof are secured at points rearwardly of the adjacent axle, a substantially Z-shaped bracket having one end secured to the machine and its opposite end arranged in advance of the latter, means for securing the front spring of the machine to the latter mentioned end of the bracket with the body of the bracket arranged between the spring and radiator", etc.

The accused automobile embodying equivalents of the foregoing claims, as it is asserted, was so constructed originally as to possess the following elements—A drop front axle, and drop center side sills. It does not involve underslung attachments nor Z-shaped brackets. But, for the purpose of having the body nearer the ground, the foregoing elements are used as a means of original construction. In other words, the accused automobile is built in that way.

At the time the plaintiff obtained his patent the Ford automobile was then constructed in such style that the body thereof was higher. No doubt the object was to give greater clearance between the body and the surface in traveling over rough and unworked roads.

It is a familiar principle that a rapidly moving object is steadier when the center of gravity is nearer to, rather than further from, the ground. This being well understood, the invention of the plaintiff, as stated by him, becomes particularly useful for lowering the body of Ford racers and speedsters. Apparently it was more expedient to lower the bodies of automobiles already built rather than to procure the construction of automobiles with lower bodies so as to utilize the foregoing principle of gravity. In order to do that, the plaintiff, therefore, obtained a patent for means or devices which became efficient in lowering the bodies of automobiles already constructed.

With improved highways it seemed important to the defendant and other manufacturers so to construct their automobiles as to secure the benefits of the lower gravity and at the same time afford sufficient clearance between the bottom of the automobiles and the ground or surface.

Plaintiff now claims in effect that any means employed by the defendant in constructing its automobiles with lowered bodies would constitute the equivalent of his devices. These will be briefly discussed.

■ 1. It does not seem necessary to inquire into the validity of the plaintiff's patent. The presumption of the law is that it is valid. Unquestionably the means covered by the patent were effective in lowering the bodies of automobiles already constructed, but that element is not in this case for consideration.

■ 2. The only question is whether or not the accused automobile is an infringement by reason of its structural arrangements.

The plaintiff's devices or means for lowering the body of an automobile already constructed do not appear to enter into or in any way affect the original construction of an automobile. It would seem to be permissible for the defendant, as a manufacturer, to build its automobiles so that the bodies thereof would be lower than prior structures. It was not intended by plaintiff's patent that he should have a monopoly on the construction of automobiles with a lower center of gravity. If the drop front axle element and the drop center side sills could not be employed without infringing' plaintiff's patent, then his patent would become all-comprehensive and all inclusive, and would compel all automobile manufacturers to adhere to the old structures of high bodies, unless, of course, they obtained a license from the plaintiff to build lower bodies.

The means employed by the defendant for its lower body are well known and have been used throughout the ages. There is not involved in that construction a mechanical discovery, but it is simply a recognized mechanical means.

The defendant could not have lowered the body of one of its previously con-

structed cars by using the drop front axle or the drop center side sills. The old axle and the old side sills of the former structure would not yield to a lowered body superimposed thereon save through means closely akin to those covered by plaintiff's patent.

The numerous devices claimed by the plaintiff as essential elements for accomplishing the results desired make his patent closely resemble process patents. In endeavoring to secure a result plaintiff cannot properly contend that all means which would obtain the same result would constitute equivalents of his process or his devices.

In National Carbon Co. v. Western Shade Cloth Co., 93 F.2d 94, the Seventh Circuit Court of Appeals considered a somewhat similar claim; local citation 97, the court stated: "It has been said that a claim for a product produced by any process which, will produce a like result covers the product only when made by equivalent processes. Pickhardt v. Packard (C.C.) 22 F 530. Thus, in a claim for a composition of matter, a product, a statement of the elements, the mode of production and, perhaps, the essential qualities of the resulting article, constitute a clearly defined claim. But such a claim covers only the product resulting from use of the same or equivalent ingredients." See, also, Lektophone Corporation v. Rola Co., 282 U.S. 168, 51 S.Ct. 93, 75 L.Ed. 274.

If, therefore, the drop front axle and the drop center side sill of the accused construction are equivalents of the underslung attachments and the Z shape brackets mentioned in the patent, then plaintiff's patent should never have been granted and would be clearly within previously known and well recognized mechanical arts.

4. It is obvious that plaintiff's patent should be limited to the object clearly stated therein. His patent covers certain devices employed for lowering the bodies of previously constructed automobiles. His patent did not give him a monopoly on means employed in the original construction.

In view of the above, the plaintiff should be denied recovery and his bill should be dismissed. Counsel for defendant will prepare and present an appropriate decree.