ESTATE STOVE CO. et al. v. GENERAL MOTORS CORPORATION et al.
Civ. No. 103.

United States District Court
S. D. Ohio, W. D.
June 21, 1950.

294

Greer M. Marechal, Greer M. Marechal, Jr., Lawrence B. Biebel, and Marechal & Biebel, all of Dayton, Ohio, Daniel L. Morris, and Blair, Curtis & Hayward, all of New York City, for plaintiffs.

Drury W. Cooper, Thomas J. Byrne, and Cooper, Kerr & Dunham, all of New York City, George H. Strickland, Robert R. Candor, Frigidaire Division, General Motors Corporation, Dayton, Ohio, for defendants.

NEVIN, Chief Judge.

## I.

This is a patent suit. The cause is presently before the Court solely on the question of Infringement. The Court has heretofore disposed of other issues raised by the pleadings and at the trial. Estate Stove Co., v. General Motors Corporation, D.C., 79 F.Supp. 765.

In its earlier Decision (just referred to) this Court held that all of the claims in issue of the patents in suit with which we are here concerned are "good and valid in law".

The patents in suit and the claims thereof in issue, which the Court has heretofore held valid are as follows:

(Ex. 1) Bradbury 2,055,246 Claims 1, 11, 14 and 24; (Ex. 2) Kahn and Hake 2,-079,618 Claims 2, 3, 4, 5, 6; (Ex. 3) Kahn and Hake 2,123,699 Claims 4, 5, 6, 9; (Ex. 4) Kahn* 1,786,429 Claims 4, 5, 6, 8, 15, 18; (Ex. 6) Wells* 1,785,568 Claims 1, 2, 3.

The ranges or "devices" of defendants which are charged to infringe the claims in issue of the patents in suit are Frigidaire Range B–60–40 (Ex. 8. Photos Exs. 9a to 9h inclusive) and Frigidaire Range B–60–41 (Ex. 10. Photos Exs. 60a to 60h inc.) As to this, the record (Pp 174 and 177, et seq.) shows:

"Mr. Morris: (Of counsel for Plaintiffs) The next thing, your Honor, I should like to offer the Frigidaire range B–60–40, * * * as Plaintiffs' Exhibit No. 8 * * *

"The Court: That is the alleged infringing range?

"Mr. Morris: Yes, sir, that is one of them. * * *

"The Court: I think that this B–60–41 should be marked for identification at any event. * * *

"Mr. Cooper: (Of counsel for Defendants) I have no objection. He can offer it in evidence, if he wants.

"The Court: Then do you wish to offer it in evidence? Let it be marked as Plaintiffs' Exhibit No. 10. * * *

"Mr. Marechal: (Of counsel for Plaintiffs) Yes, sir."

In their brief, defendants say that there are "three legal propositions" which must be considered on the issue of infringement, to wit: "(1) It is the claims, and not the disclosure, which measure the invention, (2) Every element of a claim is essential", and "(3) The state of the art to which a patent pertains must be considered in construing the claims of a patent".

As sustaining these "propositions" defendants cite several authorities, among others, McClain v. Ortmayer, 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800; Motion Picture Patents Co. v. Universal Film Manufacturing Co., 243 U.S. 502, 510, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann. Cas.1918A, 959; Water-Meter Co. v. Desper, 101 U.S. 332, 337, 25 L.Ed. 1024; Lektophone Corp. v. Rola Co., 282 U.S. 168, 51 S.Ct. 93, 75 L.Ed. 274; Minerals Separation v. Hyde, 242 U.S. 261, 264–266, 37 S. Ct. 82, 61 L.Ed. 286. The Court agrees that these "propositions" should be considered and that a reference to them is appropriate.

It has been many times held that an infringement of a patent is an erroneous phrase; what is infringed is the claims of the patent which measure the invention and define precisely what the invention is. It is

* These two patents have expired, the Wells patent on December 16, 1947, and the Kahn patent (1,786,429) on December 30, 1947.

true also that "the invention, of course, must be described and the mode of putting it to practical use, but the claims measure the invention. They may be explained and illustrated by the description. They cannot be enlarged by it". Paper Bag Patent case, Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 751, 52 L.Ed. 1122. However, the specifications and drawings of a patent may be referred to as an aid in construing a claim and a claim in a patent should be construed liberally so as to uphold and not destroy the right of the inventor. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298.

■ It is also equally true that a device which does substantially the same work in substantially the same way, and accomplishes substantially the same result as the device of the patent in suit (in any given case) is an infringement.

In Cleveland Automatic Machine Co. v. National Acme Co., 6 Cir., 52 F.2d 769, at page 772, the Court says: "Appellant's device does the same work in substantially the same way, and accomplishes substantially the same result as the machine of the Trobeck patent, and this is infringement. Gordon Form Lathe Co., v. Walcott Machine Co., [6 Cir.], 32 F.2d 55, 61"; Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685.

In a recent decision in the case of Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 855, the Supreme Court says: "In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it. But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system".

## II.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

### Findings of Fact.

1. The patents in suit and the claims thereof in issue which are charged to be infringed are:

Bradbury, 2,055,246 Claims 1, 11, 14 and 24; Kahn and Hake, 2,079,618 Claims 2, 3, 4, 5 and 6; Kahn and Hake, 2,123,699 Claims 4, 5, 6 and 9; Kahn, 1,786,429 Claims 4, 5, 6, 8, 15 and 18; Wells, 1,785,-568 Claims 1, 2 and 3.

2. The ranges of defendants which are charged to infringe are known as B–60–40 and B–60–41.

### Bradbury Patent No. 2,055,246 (Claims 1, 11, 14 and 24).

3. Each of defendants' electric ranges (B–60–40 and B–60–41) charged to infringe embodies the elements and combinations of elements defined in Claims 1, 11, 14 and 24 of Bradbury patent in suit No. 2,055,246.

4. Each of defendants' ranges charged to infringe is an electric range including electric oven heating arrangements and controls and with means to connect the oven heating arrangements to an electric power source and each includes an electrically heated bake oven which has upper and low-

er baking heating elements within the oven which are manually connected to and disconnected from the electric power source by a switch means which controls them both simultaneously in a predetermined manner.

5. In each of defendants' ranges charged to infringe the upper unit in the heating arrangements of the electric oven has a lesser baking heat output than the lower unit and the relationship between the baking heat output of the upper and lower units is a nonvariable, fixed and predetermined relationship which may not be changed by the user and which, in the baking operation, always gives an even distribution of heat (i.e., "a uniform oven heat", "proper heat balance", or the predetermined "balanced heat") within the oven for baking.

6. In each of defendants' ranges charged to infringe a thermostatic means is connected in circuit with the upper and lower baking elements and the switch means therefor for controlling the connection of the baking elements to the electric power source, to turn the upper and lower baking elements on and off intermittently, automatically and simultaneously during a baking operation to maintain the balanced heat relationship in the oven at all times during a baking operation and to maintain the oven at substantially the selected degree of temperature setting.

7. Each of defendants' ranges charged to infringe includes in its oven heating arrangements an upper unit for broiling heat output which is controlled by the switch means that controls the baking heat output from the upper and lower baking elements, in such manner that the broiling heat may not be used simultaneously with the "balanced heat" baking heat output from above and below, thus preserving and maintaining the balanced heat relationship within the oven during the baking operation.

8. The means employed by defendants in each of defendants' ranges charged to infringe for preventing direct radiation from the baking elements into the oven space include a shield above the bottom baking element and a resistance arrangement in circuit with the top baking element. It is a matter of choice as to whether a shield or defendants' resistance arrangements is used. The means used by defendants in each of their ranges charged to infringe for preventing direct radiation from the upper and lower baking elements are the full equivalents of the means described in Bradbury patent No. 2,055,246 in suit.

9. The oven heating arrangements and controls in each of defendants' ranges charged to infringe are a substantial appropriation of the structure, mode of operation and benefits of the invention defined in claims 1, 11, 14 and 24 of Bradbury Patent No. 2,055,246 in suit.

10. There is nothing in the prior art that justifies defendants' use of plaintiffs' claimed patented combinations of Bradbury patent No. 2,055,246 in suit in their B-60-40 and B-60-41 ranges.

11. Defendants' ranges B-60-40 and B-60-41 are not identical or substantially identical in mode of operation and results with anything in the prior art and are not the equivalents of anything in the prior art.

12. Defendants' ranges B-60-40 and B-60-41 do the same work in substantially the same way and accomplish substantially the same results as the device of Bradbury patent in suit No. 2,055,246.

13. Defendants' ranges B-60-40 and B-60-41 infringe claims 1, 11, 14 and 24 here in issue of Bradbury patent in suit No. 2,055,246.

Kahn and Hake Patent No. 2,079,618 (Claims 2, 3, 4, 5, 6)
Kahn and Hake Patent No. 2,123,699 (Claims 4, 5, 6, 9).

14. Each of defendants' electric ranges charged to infringe embodies the elements and combinations of elements defined in claims 2, 3, 4, 5 and 6 of Kahn and Hake Patent in suit No. 2,079,618 and in claims 4, 5, 6 and 9 of Kahn and Hake Patent in suit No. 2,123,699.

15. Each of defendants' electric ranges charged to infringe includes an electric oven having heating equipment energizable from an electric power source and controls therefor including upper and lower heating elements for baking heat output and an upper heating element for broiling heat out-

put and thermostatic and control means for selectively connecting the heating elements to the electric power source for lesser heat output from above and greater heat output from below during a baking operation and for broiling heat output from above during a broiling operation and for preventing use of the baking heat output and broiling heat output at the same time. The switch and thermostatic control mechanism includes a single manipulative handle or knob for the control mechanism and a heat responsive device located in the heating zone and responsive to the temperature within the oven so that, by manipulation of the single handle or knob to a baking setting, the electric power source will be connected to give the baking heat output from above and below in predetermined relationship for proper distribution of balanced heat within the oven and the thermostat will be set for a selected temperature to turn the upper and lower baking elements on and off intermittently, automatically and simultaneously thus maintaining during the baking operation the balanced heat relationship within the oven at substantially the selected degree of temperature setting as in Bradbury Patent No. 2,055,246 in suit. When the operating handle is in the "broil" position, the upper and lower baking elements will be disconnected from the power source and the electric power source will be connected to give the broiling heat output within the oven, and when the operating handle is manipulated to the "off" position, all the oven heating elements will be completely disconnected from the power source and the thermostatic switch means will be so positioned that the switch contacts within the control device will be positively blocked open and caused to remain open at all times when the operating handle or knob is in the "off" position.

16. In each of defendants' ranges charged to infringe the electric baking oven and the heating equipment and arrangements therefor include switch means and thermostatic control mechanism for connecting the oven heating elements to the electric power source in a predetermined manner, and the switch and control means include a single operating handle or knob for manipulation to connect the upper and lower heating elements to and disconnect them from an electric power source in said predetermined manner to achieve selectively the desired baking and broiling heat conditions within the oven and also to adjust simultaneously the thermostat mechanism to the desired temperature setting—all of these operations being selectively accomplished by the manipulation of the single operating handle or knob.

17. In each of defendants' ranges charged to infringe the switch means and control device, including the thermostatic mechanism, include means for preventing the energization of the oven heating elements for baking heat output and for broiling heat output at the same time.

18. In each of the defendants' ranges charged to infringe the switch means and control device include such construction and arrangement of the thermostat and the switch elements and contacts that, upon manipulation of the single control handle or knob to its "off" position, the mechanism of the control device is actuated and moved into such positioning that the thermostatic switch contacts will be positively held open at all times when the operating handle or knob has been moved to its "off" position and the oven heating elements will be positively disconnected from the electric power source even when the thermostat mechanism is subjected to abnormally low temperatures.

19. The oven heating control arrangements in each of defendants' ranges charged to infringe include a thermostatically controlled double pole switch operative to open and close both sides of the power circuit and to energize the baking elements and also include a second set of switch contacts to control the broiling element, the double pole switch being so constructed and arranged that the contacts thereof are positively blocked open in the "off" position of the single control handle or knob and, when in the "off" position, are positively prevented from being closed under control of the thermostat mechanism, and the double pole switch contacts being mechanically interlocked with the broiling switch contacts so that simultaneous en-

ergization of the baking heat output elements with the broiling heat output element is positively prevented.

20. The oven heating arrangements and controls in each of defendants' electric ranges charged to infringe are a substantial appropriation of the construction, mode of operation and benefits of the invention defined in claims 2, 3, 4, 5 and 6 in Kahn and Hake patent in suit No. 2,079,618 and in claims 4, 5, 6 and 9 in Kahn and Hake patent in suit No. 2,123,699.

21. Defendants' ranges B–60–40 and B–60–41 infringe Claims 2, 3, 4, 5 and 6 here in issue of Kahn and Hake patent in suit No. 2,079,618 and Claims 4, 5, 6 and 9 here in issue of Kahn and Hake patent in suit No. 2,123,699.

Kahn Patent No. 1,786,429
(Claims 4, 5, 6, 8, 15 and 18).

22. Kahn patent in suit No. 1,786,429 is directed to a door having an enameled "finish" front plate and a more rigid rear plate spaced apart by flanges formed on the back plate. Kahn is not the originator of enameled doors. In order to avoid damage to the enamel of the lighter front plate, the door handle passes freely through the front plate and is secured to the heavy rear plate which assumes all of the door stresses that are imposed on the door when it is being opened or closed. In the drawing of this Kahn patent the rigid back plate is numbered 11. A hinge means 28 is fixed to the back plate 11 and a front finish plate 13 is supported on the back plate. Clips 22 are on the inner seat of the front plate 13 and means (screw) extends through the back plate 11 for detachable connection with clip 22. The back plate 11 is peripherally flanged at 12 toward the front finish plate 13, the flanges 12 spacing the plates 11 and 13 apart. A metal reinforcement 23 is attached to the back plate. It supports the hinge means 28 and provides an anchorage 30 for the door counterbalance.

23. The door constructions of defendants' ranges B–60–40 and B–60–41 are shown in Exhibits 646 L and 646 M. The door has a front plate 10 and a back plate 21 of equal thickness and a stud 33 secured to the front plate and to the back plate by

screw 31. Edge portions of the front and back plate are flanged. A reinforcing member 6d is associated in connection with the back plate 21. A handle is secured to the front plate. Defendants' doors charged to infringe do not have hinge means fixed to a reinforcement and to the back plate 21. The hinge pin 27 (Exhibit 646 M) does not project beyond the back plate. In the B–60–40 range (Exhibit 646 L) the flange of the outer pan 10 is cut away at the corner so that it does not cover the projecting portion of the hinge means 27 from view.

24. In defendants' ranges charged to infringe the handle is connected to the front plate and the door strains are assumed by the front plate. The doors do not have a front plate which is substantially free from stress called for by claims 6, 8 and 18 of the Kahn patent. They do not have flanges spacing the plates apart called for by claims 4 and 5. They do not have a front plate which is substantially co-extensive in size of the back plate on three edges and projecting a substantial distance beyond the back plate called for by claim 15 of the Kahn patent. They do not have hinge means fixed to the back plates. They do not have a flange of the front plate extending over and covering the projecting portion of the hinge means called for by claim 5 here in issue and they do not have hinge means fixed to the reinforcement and to the back plate called for by claim 8 here in issue.

25. Range B–60–41 does not have hinge means fixed to the back plate and having a portion projecting therefrom over which the flange of the first finish plate extends and covers as required by claim 5, here in issue, nor does it have hinge means fixed to a reinforcement which provides an anchorage for the door counterbalance as required by claim 8 of the Kahn patent in suit. It does not have fulcrum pieces fixed to the back plate and projecting through one of its flanges required by claim 15 of the Kahn patent in suit, nor is the finish plate substantially co-extensive in size with the back plate on three edges as required by claim 15. The finished plate of the B–60–41 door is definitely wider on three edges.

26. Defendants' ranges charged to infringe do not embody the elements and combinations of elements of Claims 4, 5, 6, 8, 15 and 18 of Kahn patent in suit No. 1,-786,429.

27. The oven door arrangement and construction in each of defendants' ranges charged to infringe are not a substantial appropriation of the structure, mode of operation and benefits of the invention defined in claims 4, 5, 6, 8, 15 and 18 of Kahn patent in suit No. 1,786,429.

28. Claims 4, 5, 6, 8, 15 and 18, here in issue of Kahn patent in suit, No. 1,786,429 are not infringed by Defendants' ranges B-60-40 and B-60-41.

### Wells Patent No. 1,785,568
### (Claims 1, 2 and 3.)

29. Wells patent in suit No. 1,785,568 is for a gas range and "more particularly" for providing the doors thereof with a "fixed pivot" instead of "the customary offset pivot or movable pivot". Another object is stated to relate to a "counterbalancing mechanism" for a door. The door is hinged by pins 9 in standards 2 (known herein as "corners" of the range). The pins 9 are carried by the door 6 and are locked in place in recesses 12 in the outer pan or door 6 by means of a lining 13. The pins 9 are shown in the rear of a front panel 3 of the range. The outer door or pan 6 is provided at its inner end with webs 25 and arms 7. The webs 25 are located in a notch under the point 15 (Fig. 3 of the patent). The notch is cut in the flange of the door panel 3.

30. Claims 1, 2 and 3 of the Wells patent in suit are limited to a construction in which the pivot pins are journaled on or carried by the corners of the range. Its disclosure is directed to the idea of journaling the pins 9 to the corners of the range and of locking the pins 9 on the front pan or door 6 in the rear of panel 3 by means of the lining 13.

31. In defendants' ranges charged to infringe the hinge pins are not carried by the corners of the ranges but are journaled a substantial distance away from their corners. The hinge pin on the left hand side of defendants' ranges is in their center. In neither of defendants' ranges are the pivot pins journaled on the corners of the range but are journaled on brackets near the door opening. They are locked in position on the outer pan only by means of screws.

32. In claims 1, 2 and 3 of the Wells patent in suit the pivot pins are defined as "journaled on said standards" (claim 1), carried by said standards "in rear of said front wall" (claim 2) and "passing through said arms and journaled on said standards" (claim 3). The pivot pins of defendants' ranges charged to infringe are not journaled on the standards, or carried by the standards. Defendants' pivot pins are not "in rear of said front wall" (claim 2). Defendants' ranges charged to infringe do not have a "front door" 6 as distinguished from a lining 13, which "front door" is provided with arms or webs.

33. The Wells patent in suit is for a "gas range". Defendants' accused ranges are electric ranges.

34. Defendants' electric ranges charged to infringe do not embody the elements and combinations of elements of Claims 1, 2 and 3 of Wells patent in suit No. 1,785,-568.

35. The oven door mounting and hinge means in each of defendants' ranges charged to infringe are not a substantial appropriation of the structure, mode of operation and benefits of the invention defined in Claims 1, 2 and 3 of Wells patent in suit, No. 1,785,568.

36. Claims 1, 2 and 3 here in issue of Wells patent in suit No. 1,785,568 are not infringed by defendants' ranges B-60-40 and B-60-41.

### Conclusions of Law.

1. The Court has jurisdiction of the parties and of the issue as to infringement of the claims in issue of the patents in suit.

2. Defendants' ranges B-60-40 and B-60-41 infringe claims 1, 11, 14 and 24 of Bradbury patent in suit No. 2,055,246.

3. Defendants' ranges B-60-40 and B-60-41 infringe Claims 2, 3, 4, 5 and 6 of Kahn and Hake patent in suit No. 2,079,618 and Claims 4, 5, 6 and 9 of Kahn and Hake patent in suit No. 2,123,699.

4. Defendants' ranges B–60–40 and B–60–41 do not infringe Claims 4, 5, 6, 8, 15 and 18 of Kahn patent in suit No. 1,786,429.

5. Defendants' ranges B–60–40 and B–60–41 do not infringe Claims 1, 2 and 3 of Wells patent in suit No. 1,785,568.

6. Plaintiffs are entitled to an injunction against further infringements by defendants and those controlled by defendants of the claims in issue of the patents in suit which have been found in Findings of Fact Nos. 13 and 21, and held in Conclusions of Law Nos. 2 and 3 to be infringed by defendants' ranges B–60–40 and B–60–41; to an accounting by defendants for profits and damages on account of past infringements thereof, and to their court costs herein incurred.

Counsel may prepare and submit an order in accordance herewith.